**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CHRISTINE EVANS,
Plaintiff-Appellant,

v.

No. 95-1697

TECHNOLOGIES APPLICATIONS &
SERVICE COMPANY,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-94-1767-AW)

Argued: January 31, 1996

Decided: April 5, 1996

Before HALL and MURNAGHAN, Circuit Judges, and STAMP,
Chief United States District Judge for the Northern District of West
Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Murnaghan wrote the opinion,
in which Judge Hall and Chief Judge Stamp joined.

_____

**COUNSEL**

**ARGUED:** Mindy Gae Farber, JACOBS, JACOBS & FARBER,
Rockville, Maryland, for Appellant. Ronald Wayne Taylor, VEN-

ABLE, BAETJER & HOWARD, L.L.P., Baltimore, Maryland, for Appellee. **ON BRIEF:** Patricia Gillis Cousins, VENABLE, BAET-JER & HOWARD, L.L.P., Baltimore, Maryland, for Appellee.

_____

**OPINION**

MURNAGHAN, Circuit Judge:

Appellant Christine Evans appeals a district court order granting summary judgment to her employer in a Title VII discrimination case. She argues that the district court erred by failing to apply the appropriate legal standards in analyzing the motion for summary judgment, by striking much of her affidavit and by barring several of her discrimination claims as not proceeding from or relating to her original charge of failure to promote because of sex discrimination. We find her challenges meritless.

I. <u>BACKGROUND</u>

Evans was a temporary worker assigned to the Norden Service Company, Inc., when Technologies Applications and Services Company, Inc. ("TAS"), purchased it in April 1991.**1** Two months later, Gary Houseman, TAS's Director of Quality Assurance, recommended that TAS hire Evans full-time as an Inspector/Quality Control Analyst in his department.**2** Upon assuming the position in June 1991, Evans was assigned to inspect TAS computer hardware products, such as consoles for naval ship combat centers at various stages of production. As early as December 1991, Evans informed company officials that she was interested in obtaining a supervisory position.

Overall, Evans received good evaluations at TAS. Houseman described her as an excellent employee in a September 1992 performance review, but also indicated that her attitude and "moodiness" would affect her promotability. In addition, Evans and another quality

_____

**1** TAS is a government contractor that builds and supplies high technology equipment for the United States Government.
**2** Both Houseman and Evans were 42 years old at the time.

2

control inspector, Winston Samuel, both received reprimands in February 1993 for squabbling on the job.

Several personnel changes took place at TAS, some of which were related to financial difficulties at the company. In February 1992, the Quality Control Supervisor ("QCS") resigned. TAS officials selected James Thompson, a supervisor and long-time Field Service Engineer, to assume the QCS duties and work in a dual capacity as QCS/Field Engineer. Neither Evans nor Samuel was given an opportunity to apply for the supervisory position. A year later, Thompson resigned as QCS. TAS officers never advertised the QCS job as open, but instead eliminated the position and assigned its duties to Ronald Lewis, a man already performing software engineering functions. Again, neither Evans nor Samuel had a chance to apply for the reconfigured position.

On April 21, 1993, Evans filed a discrimination charge with the Montgomery County, Maryland, Human Relations Commission ("HRC"). In the charge, Evans alleged that TAS denied her a promotion because of her gender. She asserted that Houseman's February 1993 decision to eliminate the QCS position and merge its duties into the software engineering position held by Lewis constituted sex discrimination. On April 4, 1994, Evans amended her charge to allege that the February 1993 decision amounted to age discrimination as well.

The following month, Evans filed suit in the Circuit Court of Montgomery County, Maryland, claiming that TAS had discriminated against her because of her sex and age in violation of local laws and Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e et seq. Evans made numerous allegations: that another employee harassed her in 1990; that she was "ripe" but not selected for promotion in 1991;[3] that she received different pay, benefits, and seniority than younger males; that TAS failed to promote her in 1993 because of her age and her gender; and that TAS failed to take adequate affirmative steps to correct its unlawful practices.

_____
[3] Evans's complaint alleges promotion discrimination in 1991, but the relevant QCS position was vacated and filled by Thompson in 1992.

After removal to the United States District Court, TAS moved for dismissal or summary judgment, arguing that all of Evans's claims-- except for the sex discrimination allegation-- should be dismissed because they were never raised in a timely administrative charge. TAS also maintained that Evans failed to make out a prima facie case to support her claim of sex-based failure to promote and ultimately failed to establish that she was the victim of sex discrimination. In support of its position, TAS submitted an affidavit from Evans's immediate supervisor, Houseman, and other exhibits.

Evans opposed TAS's motion and submitted her own affidavit attesting to her qualifications for the QCS position. Although the memorandum of law in support of her motion indicated that she had not had the opportunity to conduct discovery, Evans had never requested discovery nor sought a continuance to enable her to gather information to refute TAS's motion.

The district judge issued a memorandum and order in February 1995, granting TAS's motion for summary judgment. The judge examined Evans's affidavit and struck portions of it as "not based on personal knowledge," "containing hearsay statements," or "irrelevant, conclusory, or both." He dismissed Evans's claims of sexual harassment, failure to promote in 1991, and discrimination in pay and benefits as outside the scope of Evans's administrative charge and not "reasonably proceeding from a sex discrimination claim based on failure to promote." The judge also dismissed Evans's age discrimination claim as untimely, finding that the allegation was belated and unrelated to her original administrative charge of sex discrimination. He noted that "Evans never mentioned her age or indicated in any manner that age was a factor" in the original charge. Finally, the district judge found that Evans had not established a prima facie case of failure to promote in 1993 because of sex discrimination nor provided any evidence that TAS's articulated reasons for assigning the QCS duties elsewhere were pretextual or "unworthy of credence." Determining that no issue of material fact existed for a jury to resolve, the district judge granted summary judgment to TAS. Evans filed a timely notice of appeal.

4

## II. CLAIM OF SEX DISCRIMINATION BY FAILURE TO PROMOTE

Evans rests on two grounds her contention that the district court erred in granting TAS's motion for summary judgment on her claim that she was denied promotion because of her sex: that the court failed to apply the appropriate legal standards and that she had not received adequate opportunity to conduct discovery. We consider each in turn.

### A. Summary Judgment Analysis

We review the district court's grant of summary judgment de novo, applying the same legal standards as the district court and viewing the facts and inferences drawn from the facts in the light most favorable to Evans, the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Nguyen v. CNA Corp., 44 F.3d 234, 236-37 (4th Cir. 1995). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). While courts must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue, summary judgment disposition remains appropriate if the plaintiff cannot prevail as a matter of law. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), cert. denied, 484 U.S. 897 (1987). If, after reviewing the record as a whole, however, we find that a reasonable jury could return a verdict for Evans, then a genuine factual dispute exists and summary judgment is improper. Anderson, 477 U.S. at 248.

Evans's charge that TAS refused to promote her because of her gender is a claim of disparate treatment. To meet her burden on summary judgment, Evans might have offered direct or circumstantial evidence, or proceeded under the proof scheme set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Mitchell v. Data General Corp., 12 F.3d 1310, 1314 (4th Cir. 1993); EEOC v. Clay Printing Co., 955 F.2d 936, 940 (4th Cir. 1992). Our analysis reveals that Evans failed to meet her various burdens under either approach. In reaching the same conclusion, the district court set forth the appropriate governing standards then analyzed the evidence

5

before it, primarily using the burden-shifting scheme established by McDonnell Douglas and its progeny.

To satisfy ordinary principles of proof, Evans must provide direct evidence of a purpose to discriminate or circumstantial evidence of sufficiently probative force to raise a genuine issue of material fact. Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988). The record reveals little, if any, direct or indirect evidence of discriminatory motive. Evans alleges differential treatment in pay, benefits and seniority but fails to provide supporting proof. She also alleges, without offering corroborating evidence, that she was discriminated against in previous promotion decisions. Evans offers an alleged comment by Houseman that he would not allow her to become a supervisor. However, the statement is not discriminatory on its face, as it could have been made in reference to any male or female employee seeking promotion. Nor is it placed in any context that makes it so. In addition, because Houseman is the same person who hired Evans, there is a "powerful inference" that the failure to promote her was not motivated by discriminatory animus. Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991); see also Mitchell, 12 F.3d at 1318. Evans also submitted her own affidavit, mostly made up of conclusory statements about her qualifications and the deficiencies of her colleagues. However, Evans's "own naked opinion, without more, is not enough to establish a prima facie case of [ ]discrimination." Goldberg, 836 F.2d at 848. For Evans to prevail, then, it must be by using the proof scheme established in McDonnell Douglas.

Under that three-step framework, the plaintiff-employee must first prove a prima facie case of discrimination by a preponderance of the evidence. If she succeeds, the defendant-employer has an opportunity to present a legitimate, non-discriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the prima facie case "drops out of the picture" and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2749 (1993); Ennis v. National Ass'n of Bus. & Educ. Radio, 53 F.3d 55, 57-58 (4th Cir. 1995). The plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); Hughes v. Bedsole, 48 F.3d 1376,

6

1384 (4th Cir.), <u>cert. denied</u>, 116 S. Ct. 190 (1995). Based on the record before us, Evans has failed to satisfy her obligation.

To establish a <u>prima facie</u> case of disparate treatment, Evans must prove a set of facts enabling the court to conclude that it is more likely than not that TAS's failure to promote her was motivated by discrimination. <u>Ennis</u>, 53 F.3d at 58. She must show by a preponderance of the evidence that (1) she is a member of a protected class; (2) her employer had an open position for which she applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. <u>Burdine</u>, 450 U.S. at 253; <u>Carter v. Ball</u>, 33 F.3d 450, 458 (4th Cir. 1994); <u>McNairn v. Sullivan</u>, 929 F.2d 974, 977 (4th Cir. 1991). While the evidence creates a close call as to Evans's qualification for the QCS position, we must remember that "the burden of establishing a <u>prima facie</u> case of disparate treatment is not onerous." <u>Burdine</u>, 450 U.S. at 253. Thus, for purposes of this appeal, we find that Evans has satisfied the "relatively easy test" of showing that she, a qualified applicant, "was rejected under circumstances which give rise to an inference of unlawful discrimination." <u>Young v. Lehman</u>, 748 F.2d 194, 197 (4th Cir.) (internal quotations and citations omitted), <u>cert. denied</u>, 471 U.S. 1061 (1985).

Our inquiry is not over, however, for TAS has articulated legitimate, non-discriminatory reasons for choosing a man to fill the QCS position instead of Evans. The company offered substantial evidence that management considered Evans not yet ready for a supervisory position, including the September 1992 performance review indicating that while she was good at her job, Evans had problems with "moodiness," Evans's February 1993 reprimands, and Houseman's statements that Evans lacked the education and training needed for the QCS position. In addition, TAS provided proof that company officials decided for financial reasons to eliminate the QCS position by merging it into another position, and then did so by assigning the QCS duties to Lewis, the person they considered best qualified to assume the QCS tasks. Unlike Evans and Samuel, Lewis was well-versed in computer hardware and software and possessed prior supervisory experience. He also had seniority in the company, having joined it in 1982.

7

Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision. See Burdine, 450 U.S. at 258-59; Young, 748 F.2d at 198. Because "the employer has discretion to choose among equally qualified candidates provided the decision is not based upon unlawful criteria," Wileman v. Frank, 979 F.2d 30, 38 (4th Cir. 1992) (citing Burdine, 450 U.S. at 259), Evans must present proof that the company's explanation is pretextual and that she was the victim of intentional discrimination. Hughes, 48 F.3d at 1384; Wileman, 979 F.2d at 33. In a failure to promote case, the plaintiff must establish that she was the better qualified candidate for the position sought. Gairola v. Virginia Dep't of Gen. Servs., 753 F.2d 1281, 1287 (4th Cir. 1985); Young, 748 F.2d at 198.

Evans's evidence falls far short of that needed to overcome summary judgment. She has failed to show that she was more qualified for the promotion than the man selected or that, as between her sex and TAS's explanation, her sex was the more likely reason for her failure to be promoted. While a Title VII plaintiff may present direct or indirect evidence to support her claim of discrimination, unsupported speculation is insufficient. Felty v. Graves-Humpreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987); Ballinger, 815 F.2d at 1005. Evans's unsubstantiated allegations and bald assertions concerning her own qualifications and the shortcomings of her co-workers fail to disprove TAS's explanation or show discrimination. See Goldberg, 836 F.2d at 848 (plaintiff's own opinions and conclusory allegations do not have sufficient "probative force to reflect a genuine issue of material fact"); Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 245 (4th Cir. 1982); Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980); Douglas v. PHH FleetAmerica Corp., 832 F. Supp. 1002, 1010 (D. Md. 1993). The evidence shows that Evans was treated like the only other similarly situated individual at TAS--Samuel also held the position of inspector and was denied the opportunity to apply for the QCS opening--and that her supervisor thought she did not merit a promotion. The demonstrated facts remain therefore that TAS management found Lewis to be the most qualified employee and shifted to him the QCS responsibilities. Evans simply has failed to demonstrate that she was more qualified than that employee and thus more deserving of the duties. "It is the perception of the decision maker which is relevant," not the self-assessment of the plaintiff. Smith , 618 F.2d at 1067.

8

Based on our review of the record, then, we find that Evans has failed to demonstrate a genuine issue for trial.

B. Summary Judgment Without Discovery

As a general rule, summary judgment is appropriate only after "adequate time for discovery." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Temkin v. Frederick County Comm'rs , 945 F.2d 716, 719 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992). "[S]ummary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Anderson, 477 U.S. at 250 n.5. Evans first argues not only that the principle is a hard and fast rule, but also that her lack of discovery placed extra burdens on TAS to prove that there was no issue for trial. However, she has provided no legal support for her contentions.

We have held that the nonmoving party cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery or moved for a continuance to permit discovery before the district court ruled. See Nguyen, 44 F.2d at 242. Federal Rule of Civil Procedure 56(f) permits a court to deny summary judgment or to order a continuance if the nonmovant shows through affidavits that it could not properly oppose a motion for summary judgment without a chance to conduct discovery. We, like other reviewing courts, place great weight on the Rule 56(f) affidavit, believing that "[a] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit." Nguyen, 44 F.3d at 242 (citing Hayes v. North State Law Enforcement Officers Ass'n, 10 F.3d 207, 215 (4th Cir. 1993)); see also Rohrbaugh v. Wyeth Labs., Inc., 916 F.2d 970, 972 n.3 (4th Cir. 1990) (if plaintiffs arguing that summary judgment was premature because they had inadequate time for discovery were "genuinely concerned," then they should have sought relief under Rule 56(f)). The Second Circuit Court of Appeals has similarly explained that "[a] reference to Rule 56(f) and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(f) affidavit . . . and the failure to file an affidavit under Rule 56(f)

9

is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir. 1994) (internal citations omitted).

The record shows that Evans never filed any discovery requests, moved for a continuance so she could conduct discovery, or filed an affidavit as required by Rule 56(f). In short, Evans never informed the district court that she needed time to develop the factual record so that she could properly oppose TAS's motion. Evans concedes that she did not file an affidavit in accordance with Rule 56(f) but argues that she made her discovery concerns known in her memorandum in opposition to TAS's summary judgment motion by noting her lack of discovery in two passages.[4] While Evans's memorandum refers to her lack of discovery, the effort is insufficient to compel denial of TAS's summary judgment motion.

While courts generally are concerned about granting summary judgment when the opposing party has not had a fair opportunity to discover essential information, they reasonably expect notification and explanation when more time for discovery is needed. In light of Evans's failure to take any affirmative steps regarding discovery, we do not find the district court's grant of summary judgment to TAS improper.

III. EVANS'S AFFIDAVIT

Evans next charges that the district court improperly struck much of the affidavit she submitted in support of her opposition to TAS's motion for summary judgment. We review the trial court's decision for abuse of discretion, United States v. Hassan El, 5 F.3d 726, 731 (4th Cir. 1993), cert. denied, 114 S. Ct. 1374 (1994), and the factual determinations underlying the evidentiary ruling for clear error, Anderson v. Bessemer City, 470 U.S. 564, 573-74 (1985).

_____

[4] Evans's memorandum in opposition states that TAS's assertions that she could not prove the McDonnell Douglas elements are without merit and inappropriate for argument "at this early stage in the litigation-- especially when plaintiff has not yet been afforded the opportunity to conduct discovery," and that "[e]ven without the aid of discovery," she could make a prima facie case of sex discrimination.

10

Generally, an affidavit filed in opposition to a motion for summary judgment must present evidence in substantially the same form as if the affiant were testifying in court. Federal Rule of Civil Procedure 56(e) specifically requires that affidavits submitted on summary judgment contain admissible evidence and be based on personal knowledge. See also Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (evidence submitted in opposition to summary judgment motion must be admissible and based on personal knowledge). Thus, summary judgment affidavits cannot be conclusory, Rohrbaugh, 916 F.2d at 975, or based upon hearsay, Maryland Highway Contractors Ass'n v. Maryland, 933 F.2d 1246, 1252 (4th Cir.), cert. denied, 502 U.S. 939 (1991).

Because the district court followed such principles when it struck many portions of Evans's affidavit, it acted properly. The district judge did not strike the entire affidavit and did not grant all of TAS's requests to strike, but instead struck and disregarded only those portions it deemed inadmissible or improper in accordance with Rule 56(e). Furthermore, the district judge carefully specified which parts of the affidavit would be stricken and why. Several of the portions struck consisted of Evans's own unsupported assertions of her qualifications and the abilities of her colleagues.[5] Because, again, we generally consider self-serving opinions without objective corroboration not significantly probative, the decision to strike and disregard as irrelevant Evans's assertions was not improper. The district court's determination that portions of the affidavit contained statements that were not based on personal knowledge does not appear to be clearly erroneous.[6] Finally, the court correctly found other statements to be hearsay, irrelevant, or conclusory, and properly struck those sections pursuant to Rule 56(e).

_____

[5] In those sections, Evans details her own qualifications, disparages the qualifications and work experiences of two of her colleagues, and discusses the qualifications of her supervisor.

[6] The district court determined that Evans, a low-level employee, would not have had information about TAS's financial affairs or the criteria for a position that was never posted, and consequently struck her statements about those matters.

11

IV. CLAIMS OF SEXUAL HARASSMENT, PAY AND BENEFITS DISCRIMINATION AND AGE DISCRIMINATION

Finally, Evans challenges the district court's dismissal of her other claims as time-barred and outside the scope of the original charge filed with the Montgomery County HRC. She maintains that those claims should have been permitted as amended to or relating back to her original charge.

Title VII and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. , provide a maximum of 300 days from the occurrence of an alleged discriminatory event for a claimant to file a timely charge with the EEOC, if she first instituted proceedings with a state or local agency, 42 U.S.C. § 2000e-5(e)(1); 26 U.S.C. § 26(d)(2), while Montgomery County law allows one year, Mont. Co., Md., Code § 27-7. Charges filed outside that time frame are barred, but a discriminatory allegation may still constitute relevant background evidence for valid claims. United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977). The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint. King v. Seaboard Coast Line R.R., 538 F.2d 581, 583 (4th Cir. 1976). Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit. King, 538 F.2d at 583; see also Lawson v. Burlington Indus., 683 F.2d 862, 863-64 (4th Cir.) (affirming lower court's determination of untimeliness because charge of illegal layoff does not encompass allegations of illegal failure to rehire), cert. denied, 459 U.S. 944 (1982); Weiss v. Coca-Cola Bottling Co., 990 F.2d 333, 337 (7th Cir. 1993) (finding job transfer and salary claims not contained in EEOC charge barred).

The only allegation that Evans made in her original administrative charge was that TAS failed to promote her in February 1993 because of her sex. Evans never filed a charge with the EEOC or the Montgomery County HRC alleging sexual harassment or discrimination in pay and benefits. Furthermore, the harassment claim alleges conduct that occurred in 1990--well beyond the scope of the applicable laws. See 42 U.S.C. § 2000e-5(e)(1); Mont. Co., Md., Code § 27-7. The dis-

12

trict court properly determined therefore that Evans's additional claims were time-barred.

Evans also contends, however, that she brought those additional allegations in order to show illegal motive and a pattern of discrimination because "all of the discriminatory events and incidents surrounding Evans's employment are closely interrelated with TAS's discrimination and unwillingness to promote her." Even so, the district court ruled properly, recognizing that while the later allegations cannot stand as separate charges of discrimination for which TAS may be liable, they might be admissible as evidence at trial to support her properly asserted sex discrimination claim. See United Air Lines, 431 U.S. at 558.

Again, Evans's original charge alleged only sex discrimination. It never mentioned age or alleged that age was a factor in TAS's alleged discriminatory denial of promotion. Evans added the age discrimination accusation after the charge had been pending for nearly a year, and more than a full year after the alleged discriminatory activity took place. Thus, on its face, the age discrimination claim is time-barred, having been filed well after both the ADEA and the county time limit had expired. See 29 U.S.C. 626(d); Mont. Co., Md., Code § 27-7. Evans maintains, however, that the age discrimination claim arose from the same facts and circumstances as her sex discrimination charge and thus relates back to the original filing date. EEOC regulations provide that when an amendment is filed outside the applicable limitations period, it may be considered timely if it involves claims "related to or growing out of" the original charge. 29 C.F.R. § 1626.8(c). However, age discrimination does not necessarily flow from sex discrimination and vice versa. See, e.g., Conroy v. Boston Edison Co., 758 F. Supp. 54, 59 (D. Mass. 1991) (untimely amendment alleging age discrimination does not relate back to original sex discrimination charge since not flowing from it); Rizzo v. WGN Continental Broadcasting Co., 601 F. Supp. 132, 134-35 (N.D.Ill. 1985) (untimely amended claim of sex discrimination does not relate back to the original charge of age discrimination because the allegations could not be inferred from it). Moreover, Title VII and ADEA claims arise from completely distinct statutory schemes. See Pejic v. Hughes Helicopters, Inc., 840 F.2d 667, 675 (9th Cir. 1988) (denying amendment adding age discrimination allegation to charge of discrimination

13

based on national origin). Other courts have observed that permitting a late amendment to an original discrimination charge adding an entirely new theory of recovery "would eviscerate the administrative charge filing requirement altogether" by depriving the employer of adequate notice and resulting in a failure to investigate by the responsible agency. Conroy, 758 F. Supp. at 59-60. Such was the outcome here: Evans filed her lawsuit only one month after she filed her amendment, depriving the HRC of time to investigate the age discrimination allegation and TAS of notice of the claim.

For these reasons, we find that the district court properly dismissed Evans's claims of sexual harassment, pay and benefit discrimination, and age discrimination as time-barred or outside the scope of her administrative charge. Because we conclude that the district court properly granted summary judgment to TAS, its order is

AFFIRMED.

14