**Henry K. NGALA, Plaintiff,**

v.

**CHEVY CHASE BANK, F.S.B., Defendant.**

**Civil No. AW–95–3530.**

United States District Court, D. Maryland.

Oct. 23, 1996.

Randall G. Rose of Rockville, MD, for plaintiff.

Ralph A. Taylor, Jr., and David Charles Goldberg, of Washington, D.C., for defendant.

### MEMORANDUM OPINION

WILLIAMS, District Judge.

Presently pending before the Court for consideration is Defendant's Motion for Summary Judgment. Plaintiff has filed a Response to which Defendant has replied. The Court has reviewed the parties' papers and the applicable case law and finds that no hearing is necessary. Local Rule 105.6 (D.Md.). For the reasons stated below, Defendant's Motion will be granted.

### I. BACKGROUND

The following facts are undisputed. Plaintiff, an African American male, began employment with Tech Aid ("Tech"), a technical employment agency, as a systems technician in October 1993.[1] Ngala Aff. ¶ 6. Tech assigned Plaintiff to work for Microcomputer

---

**1.** Plaintiff was previously employed as a computer systems technician for two other technical employment agencies. Additionally, Plaintiff held an Associates Degree in Computer Information Systems from Strayer College.

Power ("MCP"). Ngala Aff. ¶ 7. At the time of the events in question, MCP provided technical and computer support services to Defendant. Goth Decl. ¶ 5. In 1994, MCP assigned Plaintiff to work at Defendant's Operations Center in Laurel, Maryland. *Id.* Plaintiff worked as a computer analyst in Distributed Support Services ("DDS"), a part of Defendant's Information Systems ("IS") Department. *Id.*

While working in DDS, Plaintiff was supervised by Steven Goth ("Goth"). Ngala Aff. ¶ 7. Goth served as Microcomputer Support Supervisor for Defendant. Goth Decl. ¶ 2. Goth's job duties included interviewing candidates for available positions in DSS and recommending candidates for hire to senior management. *Id.*

Due to an expansion, on July 31st and November 13th of 1994, Defendant advertised a vacancy for a Senior Microcomputer Analyst Specialist ("senior analyst") in the Sunday editions of *The Washington Post* and *The Baltimore Sun.* Sikorski Decl. ¶ 4; Defendant's Exhibit B. The advertisement requested that qualified candidates forward their resume to Defendant's Human Resources Department. *Id.* After eight months of searching and upon Goth's recommendation, Defendant hired Christina McCreary ("McCreary"), a white female, to fill the senior analyst position. Sikorski Decl., ¶ 5; Goth Decl. ¶ 7. McCreary held a degree in Computer Science and Accounting. Additionally, she had previously worked as a Microsystems Programmer Analyst and as a technical consultant with IBM. *Id.*

In response to its continuous growth, Defendant advertised another senior analyst position on April 9, 1995 in the same two newspapers. Defendant's Exhibit B. Again, the advertisement asked qualified persons to direct their resumes to the Human Resources Department. *Id.* The available senior analyst position was subsequently downgraded to a computer analyst. Goth Depo. at 59. However, the downgraded position was not advertised. Ngala Aff. ¶ 19. On April 17, 1995, Jay Fryman ("Fryman"), a white male, applied and was interviewed by Goth for the computer analyst position. Sikorski Decl. ¶ 7; Goth Decl. ¶ 9. Fryman had acquired computer training while in the United States Army. Goth Decl. at ¶ 9. Additionally, Goth was familiar with Fryman because he had previously worked in DSS for approximately five months under Goth's supervision.[2] *Id.* Goth subsequently recommended Fryman for hire. Defendant hired Fryman on May 1, 1995. *Id.*

In February 1995, Plaintiff ceased employment with Tech and began working for MCP solely as a computer systems technician. Plaintiff's Opp.'n at 5. MCP did not assign Plaintiff to a new site, he remained at Defendant's Laurel, Maryland location. *Id.*

At some point while on the job, Plaintiff approached Goth about obtaining employment with Defendant. Goth Depo. at 27. The facts are in dispute as to when this encounter took place and how Goth responded to Plaintiff.[3] However, at no time while the above-mentioned positions were available, did Plaintiff submit a resume to Defendant.[4] Goth Decl. ¶ 10; Ngala Dep. at 123, 130–31.

Plaintiff filed a complaint with the Equal Opportunity Employment Commission ("EEOC"). Complaint at ¶ 5. Because the EEOC was unable to conclude its process within 180 days from Plaintiff's filing, it advised Plaintiff of his right to sue. *Id.* at ¶ 6. Subsequently, Plaintiff filed the instant action with this Court on November 20, 1995. In the complaint, Plaintiff charged that De-

---

2. During this time, Fryman was an employee of ManPower, another temporary contractor of Defendant. Fryman began employment with ManPower in December of 1994.

3. Plaintiff alleges that he had asked Goth about employment opportunities on another occasion as well. Also, Plaintiff claims that he telephoned Deborah Sikorski ("Sikorski"), Defendant's Human Resources Specialist, about the vacant computer analyst position. According to Plaintiff, Sikorski told him that there were no positions open in the IS Department. However, Plaintiff alleges that Sikorski accepted Fryman's application and interviewed him on the exact day that he spoke with her. Defendant refutes these allegations.

4. Plaintiff admits that he had learned about the vacant computer analyst position from another co-worker.

fendant violated his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); and 42 U.S.C. § 1981 ("§ 1981").

## II. *SUMMARY JUDGMENT*

Summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The movant must demonstrate that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). While the Court views the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment, *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), the mere existence of a "scintilla of evidence" is not enough to frustrate the motion. To defeat it, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

## III. *DISCUSSION*

### A. *Standards of Review*

■ The same standards of review apply in both Title VII and § 1981 cases. When asserting either of these claims, Plaintiff may attempt to prove unlawful discrimination in one of two ways. First, under the ordinary principles of proof, he may introduce "direct or indirect evidence of a purpose to discriminate or circumstantial evidence of sufficiently probative force to raise a genuine issue of material fact." *Evans v. Technologies Applications & Service Co.,* 80 F.3d 954, 959 (4th Cir.1996). This may be done by introducing incriminating statements, *United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 714 n. 3, 103 S.Ct. 1478, 1481 n. 3, 75 L.Ed.2d 403 (1983), or by demonstrating a general pattern of discrimination in Defendant's employment practices. *Reyn-*

*olds v. Abbeville County School Dist.,* 554 F.2d 638, 642 (4th Cir.1977).

Alternatively, because federal courts have recognized the inherent difficulty in proving discriminatory intent, Plaintiff may satisfy his burden through the judicially created, three step proof scheme articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under *McDonnell Douglas,* Plaintiff must first present a *prima facie* case of race discrimination. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093–94. In order to establish a *prima facie* case of race discrimination, Plaintiff must show by a preponderance of the evidence that: (1) he belongs to a protected class; (2) he applied for an available position; (3) he was qualified for the position; (4) he was rejected; and (5) the position thereafter remained open and the employer continued to seek applicants with Plaintiff's qualifications. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Once a *prima facie* case is established, the burden then shifts to Defendant to rebut this inference of unlawful discrimination by articulating "a legitimate, nondiscriminatory reason" for the failure to hire Plaintiff. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. If Defendant achieves this, Plaintiff then assumes a final burden of showing by a preponderance of the evidence that Defendant's advanced reasons are a pretext for discrimination and its intent was indeed discriminatory in nature. *Id.* at 256, 101 S.Ct. at 1095.

### B. *Analysis*

■ The Court's analysis shows that Plaintiff has failed to meet his burdens under either standard. Based on the record, Plaintiff is unable to carry his burden under ordinary principles of proof. Plaintiff's contention that Goth's alleged statement that Plaintiff should look for a operator's position in another department coupled with Goth's alleged ridiculing of Plaintiff's accent raises a reasonable inference of race discrimination on the part of Goth is without merit. First, Plaintiff only provides the Court with his own bare allegations and nothing more to

show that Goth ridiculed his accent and told him to look for a position in another department. Ngala Aff. ¶¶ 10, 16. Second, assuming that Goth did tell Plaintiff that he should apply in another department, that statement is not discriminatory on its face because it could have been made to any white or black employee seeking a position. *See e.g. Evans* 80 F.3d at 959 (finding that an alleged comment was not discriminatory on its face because the statement could have been made in reference to any male or female employee). Moreover, the statement was not alleged to have been made under any circumstances that would have caused it to be discriminatory. *Id.* Therefore, those actions alone would be insufficient to find that Goth possessed a discriminatory motive. Additionally, the Court reaches the same finding with respect to Plaintiff's contention that his alleged conversation with Sikorski and Goth allegedly denying him access to the "server" are circumstantial evidence of discrimination. Again, Plaintiff has failed to provide any proof of these allegations. Thus, he has not carried his burden under this standard.

▪ In applying the test under *McDonnell Douglas,* Plaintiff fails to accomplish the "relatively easy" task of establishing a *prima facie* case. *See e.g. Evans,* 80 F.3d at 960 (labeling the plaintiff's burden in meeting the requirements under the *prima facie* case as "a relatively easy test").

There is no dispute that Plaintiff was in a protected class. However, Plaintiff has not met the second element. Although it is well settled that Plaintiff's failure to apply for either available position does not preclude relief under Title VII, Plaintiff must show that any efforts to apply would have been futile. *Teamsters v. United States,* 431 U.S. 324, 365–71, 97 S.Ct. 1843, 1869–73, 52 L.Ed.2d 396 (1977). Simply put, Plaintiff must prove that: (1) but for "accurate knowledge" of Defendant's policy of discrimination, he would have applied for either vacant positions; and (2) if he had applied, Defendant would have discriminatorily rejected him. *See Pinchback v. Armistead Homes Corp.,* 907 F.2d 1447, 1451 (4th Cir.1990) (applying the "futile gesture" doctrine in a housing discrimination case).

Plaintiff has not put forth any evidence to get pass that hurdle. First, Plaintiff points to one alleged incident where he asked Goth about employment opportunities within his department and was told that there were "senior" positions available. Second, Plaintiff points to another incident where he claims that he inquired about openings with Defendant. During that conversation, Plaintiff alleges that Goth told him that there were positions available, however, Plaintiff should look for an "operator position" in another department. Also, Plaintiff claims that he telephoned Sikorski about the computer analyst position and that she told him there were no positions available in IS on the exact day that she interviewed Fryman. Plaintiff provides no evidence to support these allegations. However, assuming that Plaintiff had presented ample evidence, Plaintiff still falls short of meeting the test set under the "futile gesture" doctrine in *Pinchback.* These alleged statements made to Plaintiff by Goth and Sikorski do not convey any policy of discrimination on the part of Defendant. Without more, it is conceivable that the alleged responses could have amounted to a miscommunication between Plaintiff and the parties allegedly involved in the conversation. Because Plaintiff has failed to show any discriminatory policy on the part of Defendant, Plaintiff, likewise, cannot prove that Defendant would have refused his application in a racially discriminatory manner, if he had applied. Based on the above, Plaintiff has failed to show that any efforts to submit a resume for either position would have been futile. Thus, Plaintiff did not meet the second element of his *prima facie* case under *McDonnell Douglas.*

Assuming, however, that Plaintiff has presented a *prima facie* case of race discrimination, the Court finds that Defendant has clearly rebutted the inference of race discrimination by articulating legitimate reasons for not hiring Plaintiff. Defendant's Memo in Supp. at 5–7, 11–12. Plaintiff, however, has not shown that Defendant's articulated reasons are pretextual. Plaintiff could have met this burden by showing that "[the] discriminatory reason[s] more likely motivated the employer or that the employer's prof-

fered explanation[s] [are] unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

 Plaintiff contends that the reasons offered by Defendant for not hiring Plaintiff are untrue. Defendant's asserted bases for not hiring Plaintiff are the following: (1) he did not apply for either of the available positions; (2) he was not eligible for hire because of a verbal agreement with MCP that Defendant would not hire any MCP employees who had been assigned to work in DSS;[5] and (3). McCreary and Fryman were better qualified than Plaintiff. Defendant's Memo in Supp. at 5–7, 1¹–12. Plaintiff argues that the above reasons are pretextual because: (1) Plaintiff's failure to apply was caused by Goth and Sikorski's alleged response to Plaintiff's inquiry about employment opportunities; and (2) there are material facts in dispute as to whether any agreement actually existed. Plaintiff's Opp.'n at 20–25. Additionally, Plaintiff contends that he is not required to prove that he was better qualified than the persons Defendant actually hired. *Id.* at 26.

Plaintiff has not carried its ultimate burden of showing that Defendant's articulated reasons are a pretext for discrimination. Plaintiff's contention that Defendant's reason for not hiring him could not have been based on his failure to submit a resume because Goth and Sikorski's alleged responses made any efforts to apply futile is baseless. The Court has already found that neither Goth nor Sikorski precluded Plaintiff from applying for either position. Therefore, in light of the Court's finding that futility did not exist, Plaintiff's argument does nothing to discredit Defendant's reason. Additionally, Plaintiff's doubts and mere suspicions, without more, as to whether Goth on behalf of Defendant verbally agreed not to hire MCP employees who were contracted to work in DDS are not enough to show that reason was a pretense for discrimination. Thus, the Court finds that Plaintiff has failed to demonstrate that Defendant's reasons for not hiring him were pretextual. As a result, Plaintiff has not

established a claim of racial discrimination against Defendant.

## IV. *CONCLUSION*

For the reasons set forth above, Defendant's Motion for Summary Judgment will be granted.

### *ORDER*

Upon consideration of Defendant's Motion for Summary Judgment, together with Plaintiff's Response and the underlying record, and the reasons set forth in the foregoing Memorandum Opinion, IT IS ORDERED:

1. That Defendant's Motion for Summary Judgment as to Count I and II BE, and the same hereby IS, GRANTED; and

2. That this case is CLOSED; and

3. That the Clerk of the Court mail copies of the Memorandum Opinion and this Order to all counsel of record.

---

5. This agreement was allegedly made by Goth on behalf of Defendant after Al Mills, an African American MCP employee who worked in DSS, was hired by Defendant.