**ALEXANDRIA RESIDENT COUNCIL, Plaintiff,**

v.

**ALEXANDRIA REDEVELOPMENT AND HOUSING AUTHORITY, Defendant,**

Samuel Madden Homes Tenant Council, Intervenor-defendant.

Civil Action No. 97–427–A.

United States District Court, E.D. Virginia, Alexandria Division.

Sept. 24, 1997.

Victor M. Glasberg, Victor M. Glasberg & Associates, Alexandria, VA, Paul A. Fiscella, Alexandria, VA, for Plaintiff.

Michael J. Weiser, Alexandria, VA, Horace McClerklin, Wiggs & McClerklin, Alexandria, VA, for Defendants.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

Plaintiff Alexandria Resident Council, Inc. ("ARC") has brought this action against defendant Alexandria Redevelopment and Housing Authority ("ARHA"), asserting that it is the resident council for the public housing project known as the Samuel Madden Homes and that this status gives it the right to make a first refusal offer to purchase that public housing project. Samuel Madden Homes Tenant Council ("SMHTC")[1] challenges ARC's claim to be the relevant resident council and seeks to dismiss the action. The key issue in this litigation is which entity is properly qualified to be the resident council under the applicable regulations. ARC has moved for summary judgment.

## I.

The Samuel Madden Homes is a 166–unit brick townhouse development in Old Town Alexandria. This action involves the "downtown" portion of the development which consists of 100 units ("the downtown homes"). ARHA owns and manages the downtown homes and leases the units at reduced rates to eligible low-income persons in exchange for subsidies from the Department of Housing and Urban Development ("HUD").

ARC is a tenant organization representing public housing tenants across Alexandria.[2] ARC is a non-stock corporation with no corporate members and is managed by a Board of Directors. According to its bylaws, the members of the Board of Directors must live in public housing in Alexandria and must be elected by Alexandria public housing residents.

On February 25, 1991, ARC and ARHA entered into a Memorandum of Understanding that set forth the elements of their partnership agreement with respect to providing programs and services to the public housing residents that ARC represents.[3] Since that time, ARC has initiated several programs in Alexandria public housing developments, including the downtown homes. Such programs include anti-drug activities, resident initiatives training, economic development and self-sufficiency, resident management, and home ownership Two residents of the downtown homes won offices in ARC's most recent elections on November 22, 1996, as vice president and historian. ARHA has provided ARC with a vacant unit in the downtown homes to use as its office.

ARC maintains that since its recognition by ARHA, it has received annual funding based on the total number of units that it represents. ARHA most recently issued funds to ARC for tenant participation activities in January 1997. In addition to the funds received from ARHA, ARC received a grant from HUD to address ARC's goals of reducing crime and drug abuse in the public housing units, increasing educational and employment opportunities for residents, and enhancing the physical environment.

---

**1.** On May 16, 1997, this Court granted SMHTC leave to intervene as a defendant in this action.

**2.** In fact, ARC represents all Alexandria public housing tenants except for the residents at the Ladrey Seniors Highrise, who are represented by the Ladrey Advisory Council ("LAC").

**3.** The 1991 Memorandum of Understanding was the first of several consecutive agreements, the most recent being executed on December 17, 1996, and expiring on December 31, 1998.

In 1994, ARHA convened a task force to study the options regarding redevelopment or rehabilitation of the Samuel Madden Homes. ARC supported rehabilitation of the units; however, the task force was divided, and on March 25, 1996, ARHA voted to redevelop the downtown homes. ARC maintains that thereafter it advocated for returning as many current residents as possible to the redeveloped site.

On August 15, 1996, ARHA issued a "Notice of Opportunity to Organize" to residents of the downtown homes stating that "[b]ecause ARC represents all ARHA public housing residents, ARC does not qualify as the resident organization representing Samuel Madden Hones (Downtown) residents." ARC asserts that this notice was the first time that its representation of the downtown homes had ever been questioned. On September 20, 1996, five residents of the downtown homes formed the Samuel Madden Homes Cooperative, Inc., specifically for the purpose of organizing to attempt to buy the downtown homes. In response to the ARHA Notice, the newly formed group claimed to represent a majority of the downtown residents. ARC, however, also claimed to represent a majority of the downtown residents and on September 30, 1996, advised ARHA in writing of its intention to exercise its right of first refusal to purchase the homes.

It appears that when ARHA attempted to verify which organization actually represented a majority, it found that among the downtown residents that each organization listed in support of its representation, thirty-seven names appeared on both lists. After those thirty-seven residents were stricken from the lists, neither organization had a majority. ARHA therefore issued another notice on November 5, 1996, indicating that it would seek guidance from HUD.

It appears that HUD notified ARHA that HUD was not responsible for making the decision regarding which organization ARHA should recognize as the resident council for the downtown homes, but that ARC was Eligible to represent those residents. It also appears that HUD indicated that the Samuel Madden Homes Cooperative, Inc. did not follow HUD election procedures and that the group therefore could be considered "illegal."

Rather than accepting ARC as the resident council, on February 26, 1997, ARHA followed up with a letter to the presidents of both organizations explaining that ARHA could recognize neither as the resident organization because neither group represented a majority of the residents of the downtown homes. That letter concluded that the "best course is for the Samuel Madden residents to represent themselves, by forming their own tenant council."

Also on February 26, 1997, ARHA sent a letter to the downtown residents, urging them to form their own tenant council. On that same day, ARHA notified the downtown residents that an election of officers for a new tenant council would take place on March 31, 1997. On that date, the same five residents who had formed the Samuel Madden Homes Cooperative voted and elected each other as the officers of the Samuel Madden Homes Tenant Council ("SMHTC"). There is no evidence to indicate that anyone other than these five residents voted in this election. On April 18, 1997, ARHA issued a notice of opportunity to purchase to SMHTC. ARHA did not issue such a notice to ARC.

## II.

On March 27, 1997, ARC brought this civil action against ARHA, alleging that not giving ARC the opportunity to buy the homes was a violation of its members' constitutional rights under 42 U.S.C. § 1983 and a breach of the Memorandum of Understanding between the parties. ARC points to that portion of the Memorandum of Understanding which states that one of the goals of the parties is: "To make available to ARC (in accordance with HUD's regulations) when pre-existing conditions provide for the sale of any ARHA property, first right of refusal to purchase." Accordingly, ARC asserts that it is the bona fide resident council for the tenants of the downtown homes and that, as such, it has a right of first refusal, pursuant to federal law and the Memorandum of Understanding between ARC and ARHA, to purchase the downtown units before their being redeveloped. In its Complaint, ARC

seeks various forms of declaratory and injunctive relief.[4]

## III.

■ Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 958 (4th Cir.1996). This action is ripe for summary judgment disposition because there does not appear to be any disagreement as to the material facts of the case. In fact, the parties agree that the only issue in this action is whether ARC is the resident council for the downtown homes under the applicable HUD regulations and therefore entitled to a right of first refusal to purchase the downtown homes.

The heart of the analysis is to determine whether ARC satisfies the definition of a resident council under the regulations.[5] The requirements for a resident council are set forth at 24 C.F.R. § 964.115 (1996). To receive official recognition from HUD and the relevant public housing authority and to be eligible to receive funds for resident council activities, the council must consist of persons residing in public housing and represent residents residing:

(1) in scattered site buildings;

(2) in areas of contiguous row houses;

(3) in one or more contiguous buildings;

(4) in a development; or

(5) in a combination of these buildings or developments.

Id. § 964.115(a). In addition, a resident council must meet the following requirements:

It must adopt written procedures such as by-laws, or a constitution which provides for the election of residents to the governing board by the voting membership of the residents residing in public housing ... on a regular basis but at least once every three (3) years. The written procedures must provide for the recall of the resident board by the voting membership. These provisions shall allow for a petition or other expression of the voting membership's desire for a recall election, and set the number of percentage of voting membership ("threshold") who must be in agreement in order to hold a recall election. This threshold shall not be less than 10 percent of the voting membership.

It must have a democratically elected governing board that is elected by the voting membership. At a minimum, the governing board should consist of five (5) elected board members.

The voting membership must consist of heads of households (any age) and other residents at least 18 years of age or older and whose name appears on a lease for the unit in the public housing that the resident council represents.

Id. § 964.115(b), (c). In addition, the following election procedures are mandatory for a resident council:

(1) All procedures must assure fair and frequent elections of resident council members—at least once every three years for each member.

(2) Staggered terms for resident council governing board members and term limits shall be discretionary with the resident council.

---

4. Among the relief requested is a declaration that ARC is the recognized and duly elected resident council for the downtown Samuel Madden Homes; a declaration that plaintiff is entitled under federal law and its contract to offer to purchase the property; a declaration that defendant has violated plaintiff's rights under federal law; a permanent injunction that defendant can-

not sell the property without first giving plaintiff an opportunity to buy; an order requiring defendant to perform its contractual obligation; and an award for costs and attorney fees.

5. SMHTC's Motion to Dismiss raises this precise issue; therefore, this determination also will resolve that motion, as discussed below.

(3) Each resident council shall adopt and issue election and recall procedures in their by-laws.

(4) The election procedures shall include qualifications to run for office, frequency of elections, procedures for recall and term limits if desired.

(5) All voting members of the resident community must be given sufficient notice (at least 30 days) for nomination and election. The notice should include a description of election procedures, eligibility requirements, and dates of nominations and elections.

*Id.* § 964.130(a).

It is undisputed that ARC meets all of these requirements. In addition, ARC has received official recognition from HUD and AREA and has received funds for tenant activities, most recently in January 1997. ARC holds monthly meetings and is involved in drug prevention-type activities and conducts annual inspections of each public housing site. At ARC's most recent elections on November 22, 1996, two tenants of the downtown homes took office as vice president and historian. Moreover, ARHA has provided ARC with a vacant unit in the downtown homes to use as its office, as contemplated by the regulations with respect to resident councils. *See id.* § 964.18(a)(5).

In opposition to the plaintiff's summary judgment motion, defendants argue that ARC is not a resident council, but rather a jurisdiction-wide resident council. Defendants assert that under federal law, only the resident council at the affected site, and not the jurisdiction-wide resident council, shall have the right to make an offer to buy the units before redevelopment. *See* 42 U.S.C. § 1437p(b)(1) (1994); 24 C.F.R. § 970.13(d). The defendants argue that ARC's status as a jurisdiction-wide resident council therefore precludes it from being entitled to receive an opportunity to purchase the downtown homes. Defendants maintain that applicable federal law and legislative history support their position.

Section 18(b) of the U.S. Housing Act of 1937, 42 U.S.C. § 1437p(b)(1), requires HUD to review housing agencies' plans to replace existing housing and requires the housing

agency to develop its plan in consultation with tenants and tenant councils. In 1990 this section was amended by Section 412 of the National Affordable Housing Act to require that "tenant councils ... if any, [be] given appropriate opportunities to purchase the project or portion of the project covered by the application...." This amendment did not make clear who was eligible to receive opportunities to purchase.

Congress further amended the applicable law when it passed section 116(a) of the Housing and Community Development Act pursuant to which the housing authority must extend the opportunity to purchase only to the residents at the affected development. AHRA argues that the legislative history suggests that ARC does not qualify as a resident organization at the affected development:

> The committee bill amends the public housing demolition and disposition requirements of section 18 of the 1937 Act to clarify that [public housing authorities] must consult with the tenants or tenant councils of the project or portion of a project covered by the demolition or disposition application. The Committee has added this provision to make clear the consultation requirement applies only to the tenants of the subject project (or portion thereof) proposed for demolition or disposition and not to all tenants occupying any public housing owned by the [public housing authority] proposing the demolition or disposition.

H.R.Rep. No. 102–760, at 86 (1992), *reprinted in* 1992 U.S.C.C.A.N. 3281, 3365–66. After this new legislation was passed, HUD issued a Notice to Regional Administrators, Directors and Offices of Public Housing to clarify the "Notice of guidelines for resident organization opportunity to purchase" that appeared in the Federal Register on October 6, 1992. *See* 57 Fed.Reg. 46,074 (1992). The notice requires housing authorities to make the offer of purchase "exclusively to the resident organization(s) in the affected development," and says that housing authorities are "no longer required under Section 412 to offer the development ... to the [public

housing authority]-wide resident organization."

Defendants point out that HUD issued final rules implementing the Housing and Community Development Act of 1992. *See* 60 Fed.Reg. 3706 (1995). These rules provide:

Section 116(a) of the Housing and Community Development Act of 1992 amended section 18 of the U.S. Housing Act of 1937 to require [public housing authorities] to limit the opportunity to purchase the development or portion of development proposed for demolition or disposition only to the resident organization(s) at the affected development. This provision clarifies an ambiguity regarding the breadth of the offer.

*Id.* In addition, defendants note that HUD Assistant Secretary for Public and Indian Housing issued a memorandum on July 25, 1995, to the Office of Public Housing Directors that stated: "N.B. the [housing authority] is *no longer required* to offer the property *to the [housing authority] wide resident organization."* (emphasis in original). In light of these interpretations of the law, defendants argue that ARC does not have a statutory right of first refusal to purchase the downtown homes.

Although there is some indicia that ARC is a jurisdiction-wide resident council given the large percentage of public housing residents that it represents,[6] ARC argues that it is not a jurisdiction–wide resident council because it does not represent all public housing residents under ARHA's jurisdiction. ARC maintains that it cannot represent all public housing residents in Alexandria because of the presence of the LAC, which represents public housing tenants in the Ladrey Senior Highrise building in Alexandria. ARC also points out that funding of resident councils must be based on the number of units that each resident council represents. *See* 24 C.F.R. § 964.150. ARC argues that ARHA's funding of these two resident councils, therefore, is additional proof of ARC's status as the resident council for the downtown homes,

and not as a jurisdiction–wide resident council. ARC notes that it was the LAC, and not ARC, that received the per–unit funding for the residents of the Ladrey Senior Highrise in January 1997.

ARC further argues that even if it did represent all public housing tenants it would not be a jurisdiction–wide council under the regulations because it was not formed by the coming together of multiple resident councils as the regulations contemplate. *See id,* § 964.105(a). The regulations provide that a jurisdiction–wide resident council is an umbrella–type of organization whose role is merely to advise with respect to housing authority policy. *See id.* § 964.105(b). The Court notes that ARC's role in the Alexandria public housing community has never been limited to one of a mere advisor. Moreover, other than the LAC, with which ARC has no affiliation, there is no other resident council in Alexandria whose interests ARC could have represented. As ARC correctly points out in its brief, it was neither formed as, nor does it function as, a jurisdiction–wide resident council within the meaning of 24 C.F.R. § 964.105(a). Rather, ARC functions as the resident council for each of the housing units that it represents. Thus, this Court finds that ARC is not a jurisdiction–wide resident council within the meaning of the regulations.

Although ARC does not satisfy the requirements of a jurisdiction–wide resident council under the regulations, it clearly satisfies the requirements of a resident council, as discussed above. Indeed, that ARHA disputes ARC's status as a resident council is puzzling in light of the history between the parties. As ARC points out, public housing residents have a right to organize and elect a resident council to represent their interests. The applicable regulations provide that "[a]s long as proper procedures are followed, the [public housing authority] shall recognize the duly elected resident council to participate fully through a working relationship with the [public housing authority]." *Id.* § 964.11. The regulations further provide that public

---

**6.** In fact, ARC stated in its Complaint that it was the jurisdiction-wide resident council. This aver-   ment, however, is not fatal.

housing authorities with 250 or more public housing units "shall officially recognize a duly elected resident council as the sole representative of the residents it purports to represent, and support its tenant participation activities." *Id.* § 964.18(a).

ARC maintains that ARHA must recognize ARC as the sole resident council for the downtown homes. The Court notes that if ARHA did not believe that ARC was the resident council for the downtown homes, it was required under HUD regulations "to withdraw recognition of the resident council and to withhold resident services funds." *Id.* § 964.130.[7] There is no evidence in the record that ARHA has made any effort to withhold resident services funds from ARC or that any other group, such as the SMHTC, has received any such funds. In addition, because ARHA has never withdrawn its recognition of ARC in the way that the regulations contemplate, it is specifically prohibited from recognizing a competing resident council such as the SMHTC. *See id.* § 964.18(a)(7).

Accordingly, this Court holds that ARC is a resident council under the applicable HUD regulations and that, as such, it is entitled to a right of first refusal to purchase the downtown homes pursuant to applicable federal law. *See* 42 U.S.C. § 1437p(b)(1); 24 C.F.R. § 970.13(d). The Court finds that this ruling avoids creation of a scenario that not only is inefficient, but also fails to capitalize on the experience and organizational history of the ARC. It is the Court's assessment that in terms of relative bargaining power, ARC has far greater institutional experience and expertise than the SMHTC, even though the two organizations should have the same interest, namely the welfare of the public housing residents that they represent. Ensuring

that ARC is given its statutory right of first refusal to purchase the downtown homes maximizes the possibility that those residents will maintain their housing. The purpose of the HUD regulations cannot be to give rise to the formation of a resident council the sole purpose of which would be to make an offer to purchase. To interpret them as such would be to subvert the entire policy behind the role of a resident council. *See* 24 C.F.R. § 964.100.

■ The Court also finds that even if ARC were, as defendants argue, a "[housing authority]wide resident organization," the evidence that defendants present provides only that the housing authority is not required to make an offer. Defendants cannot ignore the fact that the Memorandum of Understanding that the parties entered into on January 1, 1997, provides that one of the goals of the parties is "[t]o make available to ARC (in accordance with HUD's regulations) when pre–existing conditions provide for the sale of any ARHA property, first right of refusal to purchase."[8] ARC correctly points out that under ARHA's theory, the right of first refusal, confirmed in the Memorandum of Understanding, would have been limited only to a proposal to demolish all of the public housing units in the City of Alexandria. Surely this result is not what the parties contemplated. The Court therefore finds that the Memorandum of Understanding provides a secondary basis on which to find that ARC is entitled to a right of first refusal to purchase the downtown homes.

## IV.

■ This ruling also resolves SMHTC's Motion to Dismiss, the crux of which is that ARC does not fall within the definition of "resident council."[9] In its motion, SMHTC

7. Although this provision pertains to election procedures of the resident council, the Court finds that it is indicative of a housing authority's general obligations upon a finding that an organization no longer qualifies as a resident council.

8. The Court notes that the Memorandum of Understanding is subject to the HUD regulations and cannot trump them; however, there does not appear to be any provision in the regulations that would preclude ARC from maintaining a status as both a jurisdiction–wide resident council and

the duly–appointed resident council for the downtown homes. *See* 24 C.F.R. §§ 964.105, 964.115.

9. SMHTC also argues that ARC is not a resident management corporation because it was not approved by a resident council or public housing residents. Because this Court finds that ARC is a resident council, it does not address the issue of whether it is a resident management corporation.

**416**

argues first that ARC could not be a resident council because its Articles of Incorporation state that it shall have no corporate members. The Court finds this argument unconvincing. Although ARC is a non–stock corporation with no corporate members, it is managed by a Board of Directors whose members must live in public housing in Alexandria and must be elected by Alexandria public housing residents. As fully discussed above, ARC clearly has met the requirements for a resident council set forth in the regulations.

■ SMHTC also argues that this action should be dismissed on the grounds of equitable mootness because SMHTC already has made an offer to purchase the downtown homes. The Court finds this argument unconvincing, however, in light of its findings that ARC is the resident council for the downtown homes, that ARHA has never withdrawn its recognition of ARC in the way that the regulations contemplate, that ARHA therefore was prohibited from recognizing a competing resident council such as the SMHTC, and that ARC was entitled to a right of first refusal. Accordingly, SMHTC's offer to purchase in no way changes the legal analysis, and SMHTC's Motion to Dismiss is denied on all grounds.

### V.

For the reasons stated in this Memorandum Opinion, plaintiff's Motion for Summary Judgment will be granted, SMHTC's Motion to Dismiss will be denied, and an appropriate order will issue.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion and because this Court finds that defendant Alexandria Redevelopment and Housing Authority ("ARHA") has violated plaintiff's rights under 42 U.S.C. § 1983 and that plaintiff, and not intervenor-defendant Samuel Madden Homes Tenant Council ("SMHTC"), is entitled under federal law and the Memorandum of Understanding between the parties to offer to purchase the downtown Samuel Madden Homes, plaintiff's Motion for Summary Judgment is GRANTED, and it is hereby

ORDERED that judgment be and is entered against defendants and in favor of plaintiff on all counts; and it is further

ORDERED that:

(1) ARHA recognize the Alexandria Resident Council ("ARC") as the duly elected resident council for the downtown Samuel Madden Homes;

(2) ARHA be and is enjoined from selling the downtown Samuel Madden Homes without first giving ARC an opportunity to purchase such property;

(3) ARHA perform its obligations under the Memorandum of Understanding between the parties; and

(4) costs and reasonable attorney fees be and are awarded to plaintiff.

Intervenor–defendant SMHTC's Motion to Dismiss is DENIED.

Counsel for plaintiff has thirty (30) days in which to submit the costs and attorney fees amounts to defense counsel for a response.