**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
<u>Plaintiff-Appellant,</u>

v.                                                                    No. 98-1195

MCI TELECOMMUNICATIONS,
INCORPORATED,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-96-661-A)

Argued: April 7, 1999

Decided: July 28, 1999

Before ERVIN, LUTTIG, and TRAXLER,
Circuit Judges.

_____

Affirmed in part and reversed in part by unpublished opinion. Judge
Ervin wrote the opinion, in which Judge Luttig and Judge Traxler
joined.

_____

**COUNSEL**

**ARGUED:** Susan Lisabeth Starr, EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION, Washington, D.C., for Appellant. David
Jay Cynamon, SHAW, PITTMAN, POTTS & TROWBRIDGE,

Washington, D.C., for Appellee. **ON BRIEF:** C. Gregory Stewart, General Counsel, Philip B. Sklover, Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellant. Lori Vaughn Ebersohl, SHAW, PITTMAN, POTTS & TROWBRIDGE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

ERVIN, Circuit Judge:

Appellant the Equal Employment Opportunity Commission ("EEOC") sued appellee MCI Telecom, Incorporated ("MCIT"), on behalf of Dolly Cox, a technical writer whom MCIT interviewed but did not subsequently hire. The EEOC describes Cox as a "dark-skinned Asian Indian," claiming in its Title VII action that MCIT discriminated against Cox on the basis of her race and her national origin when the company hired two allegedly less-qualified white men to fill positions for which Cox had been considered. See 42 U.S.C.A. § 2000e-2(a) (West 1994). The district court granted summary judgment for MCIT, ruling that Cox was an independent contractor and therefore not entitled to Title VII's protection from unlawful discrimination. The court also awarded attorneys' fees and costs to MCIT.

On appeal the EEOC argues that MCIT created a common-law employment relationship with the two candidates that the company selected for the positions in question. Assuming without deciding that Cox was therefore an applicant for employment under Title VII, we nonetheless find that the EEOC offers insufficient evidence that MCIT discriminated against Cox. We affirm solely on this ground. We reverse the award of attorneys' fees and costs, because the district court premised this award upon the erroneous conclusion that Fourth Circuit precedent rendered the EEOC's case frivolous and without merit.

2

I.

In 1991 MCIT decided to hire additional workers to assist with projects in the company's Management Information Systems (MIS) department. Gary Braz, a senior MIS manager at MCIT, asked a subordinate, Edmond Parkinson, to assist him in screening resumes and interviewing personnel to staff the new MIS projects. At Braz's request, Parkinson collected resumes from MCIT-approved vendors.[1]

One such vendor, The Registry, Inc., provided MCIT with a number of resumes, including the resume of the complainant in this case, Dolly Cox. According to her own deposition testimony, Cox submitted her resume to The Registry with the clear intent to operate as an independent contractor. Cox understood that The Registry would arrange interviews for her, place her with various corporate clients, and then remit compensation directly to her. As did the other Registry employees, Cox specified the hourly rate that she would be paid by The Registry. The Registry would then negotiate with its corporate clients for a placement fee that covered contractor compensation, overhead, and profit.

MCIT solicited resumes from The Registry pursuant to a contract specifying that all personnel supplied by The Registry were to be considered employees of The Registry only. MCIT maintains that in November of 1991 it sought to hire Registry consultants to staff one particular project: a complex multi-media presentation that the MIS department was preparing to unveil at a company-wide meeting. Edmund Parkinson began the hiring process for this project, operating under the supervision of Gary Braz.

From among the resumes submitted by vendors, Parkinson selected six candidates for an initial interview. One of these candidates was Dolly Cox. Cox's resume states that she has eight years of experience, much of it in script writing, plus a familiarity with Macintosh computers. Cox's resume also indicates that she has a master's degree in "interactive technologies" and formal training in video disk design.

_____

[1] MCIT uses the term "vendors" in reference to the employment agencies that routinely provide the company with technical consultants.

Cox's resume does not reflect significant television or film editing experience.

Edmond Parkinson conducted the initial interviews for the personnel needed to staff MCIT's MIS project. Parkinson's approach to the interviews was somewhat unorthodox: he chose six candidates and invited each of them to his home. Once the candidates had all arrived, Parkinson requested that they prepare a videotaped group presentation that he would in turn submit to Gary Braz.

Parkinson presented the group to Braz with the hope that MCIT would hire all six candidates as a team. Parkinson indicated to each of the candidates, including Cox, that he or she would soon receive an offer from MCIT. Braz insists, however, that at the time of the interviews he told both Parkinson and the candidates that he did not have approved funding for six new positions. From the group that comprised Cox, two women of unknown race, and three white men, Braz eventually selected the three white men, Adam Baumstark, Sterling Daines, and Frank Mitko, as new hires.[2]

According to the EEOC, Parkinson implored Braz to hire Cox, believing that she was more qualified than either Daines or Baumstark. Parkinson's affidavit states simply that he "preferred" Cox to the other candidates. For its part, MCIT asserts that Braz chose Baumstark for his extensive television experience and his familiarity with the Macintosh computer, and Daines for his lower billing rate and general suitability "to do whatever needs to be done." The company also maintains that Baumstark and Daines were selected for one specific MIS project and not an open-ended assignment, although the record suggests otherwise.[3]

_____

[2] Braz hired Mitko to fill a temporary computer programming position, and the EEOC does not allege that Mitko's hiring was an act of discrimination against Cox.

[3] Both Daines and Baumstark were required to work no fewer than forty hours per week, always under the direction and close supervision of MCIT employees. Although MCIT did not pay benefits or provide tax withholding for Daines and Baumstark, the two were paid by the hour, not by the project, and they appeared to use MCIT's premises and computer equipment exclusively. Eventually, Daines was hired as an official employee, and Baumstark was offered a transfer to MCIT's Colorado office.

4

Five years after the events at issue, the EEOC filed a complaint in district court, alleging that MCIT had violated Title VII's prohibition against discrimination in hiring when the company selected Daines and Baumstark instead of Cox. MCIT responded with a motion for summary judgment. The district court granted the motion on the grounds that Cox's relationship with MCIT was too "inchoate" to warrant Title VII protection.

The EEOC then moved for reconsideration, arguing that summary judgment was premature because no discovery had yet occurred in the case. The district court granted the EEOC's motion without prejudice to MCIT's right to refile for summary judgment at the conclusion of discovery. Once the parties had completed discovery, MCIT requested that the EEOC dismiss the case. When the EEOC refused, MCIT moved again for summary judgment, arguing that Cox was an independent contractor, or, in the alternative, that the EEOC had not presented sufficient evidence of discriminatory conduct. MCIT also moved the court for a grant of attorneys' fees and costs.

The district court granted both of MCIT's motions, ruling that Cox was an independent contractor as a matter of law, and awarding attorneys' fees and costs to MCIT. The court determined that these fees and court costs should accrue from a date ten days subsequent to the publication of the Fourth Circuit's opinion in Cilecek v. Inova Health Syst. Servs., 115 F.3d 256 (4th Cir. 1997). The district court viewed Cilecek as dispositive of the issues at bar and concluded that once the opinion issued, the EEOC should have voluntarily dismissed the Cox litigation.

This appeal followed.

II.

Title VII's protective reach extends beyond employees to cover job applicants, but only in the context of a potential employment relationship. See Bender v. Suburban Hosp., Inc., 159 F.3d 186, 189 n.2 (4th Cir. 1998). The EEOC argues that once a hiring party has created a common-law employment relationship with its independent contractors, unsuccessful applicants for those contracting positions may then invoke Title VII's protection against discrimination in hiring. We

5

decline to reach this issue, and hold instead that viewing the facts in the light most favorable to Cox, the EEOC has not presented sufficient evidence of discrimination to survive summary judgment on the merits of its claim.

Specifically, the EEOC has failed to rebut Braz's stated rationale for hiring Daines and Baumstarck instead of Cox. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 807 (1973) (once the Title VII defendant articulates a legitimate, non-discriminatory reason for its decision, the plaintiff must prove that this reason is a pretext for illegal discrimination). If MCIT offers a plausible explanation for its hiring decision, the EEOC must demonstrate that this articulated justification is both false and a pretext for illegal discrimination. See Jiminez v. Mary Washington College, 57 F.3d 369, 378 (4th Cir. 1995). Moreover, to establish pretext where relative job qualifications are at issue, the EEOC must prove, not only that Cox was qualified for the position, but that her qualifications were superior to those of the candidates actually hired. See Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996). See also Gairola v. Commonwealth of Va. Department of General Svcs., 753 F.2d 1281, 1287 (4th Cir. 1985).

To support its claims of falsity and pretext the EEOC relies upon Braz's allegedly inconsistent statements concerning MCIT's hiring criteria for the contractor positions. Braz told an Arlington County Human Rights Commission investigator that he sought the most qualified candidates; later, Braz testified that he hired Baumstark for his broad range of television production and editing experience and Daines for his junior status and low billing rate. **4** Although Braz may have emphasized differing criteria in each of these two explanations, we do not find that this inconsistency rises to the level of mendacity. Braz's statements, standing alone, are not persuasive evidence of discriminatory pretext, and the EEOC offers nothing else.

MCIT has maintained that budget restrictions affected Braz's hiring decision, causing him to prioritize Baumstark's broad experience

_____

**4** Daines testified that he received $25.00 per hour from his employer for the MCIT project. This amount is less than half of the $60.00 hourly minimum rate that Cox requested from The Registry.

6

and Daines' relative economy over Cox's narrower technical skills. To rebut this seemingly legitimate and non-discriminatory rationale, the EEOC would need to show that Cox, whose expertise is primarily in technical writing, was either more broadly experienced than Baumstark, or more cost-effective than Daines. This the EEOC has failed to do, and so we affirm the grant of summary judgment for MCIT.

III.

A district court may award attorneys' fees and costs to a defendant only when the plaintiff has brought a case that is frivolous or without factual or legal foundation. See Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978). In the instant case, the district court awarded attorneys' fees and costs after concluding that under our Cilecek holding, Cox was unquestionably an independent contractor and not an employee. Because the EEOC declined to abandon the Cox litigation in response to the publication of Cilecek, the court granted MCIT all costs and fees accruing from a date ten days after the release of that decision.[5]

Cilicek holds that among the factors relevant to determining whether a physician is an employee of a hospital, the degree to which the hospital controls when and how the physician provides services is particularly significant. 115 F.3d at 260 ("[a]t root, the distinction ... between an employee and an independent contractor rests on the degree of control exercised by the hiring party."). We restated this holding in Bender v. Suburban Hospital, when we again instructed lower courts to resolve the question of a physician's employment status by applying traditional principles of agency law, while recognizing "the critical question is the `degree of control.'" 159 F.3d at 190 (citing Cilecek, 115 F.3d at 260).

Cilecek did address additional factors, other than control, that may serve as indicia of an employment relationship. These factors include the intent of the parties, the withholding of taxes, and the provision of employee benefits. 115 F.3d at 261. As we were careful to note,

_____

[5] The district court concluded that after ten days had elapsed from publication of the opinion, the EEOC could fairly be charged with knowledge of Cilicek's holding.

7

however, the relative weighting of these factors must be industry-specific. See id. at 260 ("the degree of distinction between [an employer and the hiring party in an independent contractor relationship] is related to the work itself and the industry in which it is performed."). Our analyses in Cilecek and Bender were tailored to the special circumstances of the medical profession, where ultimate control of patient care must, of necessity, rest with the treating physician. See Cilecek, 115 F.3d at 260 (concluding, "it is less productive to debate the control over the discharge of professional services in the medical context than it might be in other service relationships."). When deciding whether a physician is a hospital employee, the court must therefore look beyond the degree of control to the full context of the physician's work environment.

Cilecek was a case about doctors and hospitals; the instant case, by contrast, concerns contingent workers in the information technology industry. We find that it was not a priori unreasonable for the EEOC to distinguish Cilecek on this basis, or for the agency to argue on these facts that MCIT's contingent workers should rightfully be designated common-law employees for the purpose of Title VII litigation. Indeed, the Ninth Circuit accepted a similar argument when it held that certain contingent information technology workers engaged by the Microsoft Corporation were common-law employees entitled to benefits under the federal Employee Retirement Income Security Act (ERISA). See Vizcaino v. Microsoft Corp., 120 F.3d 1006, 1012-1014 (9th Cir. 1997).

IV.

Because Cox's claim fails for want of sufficient proof of discrimination, we need not decide today whether an unsuccessful applicant for an independent contractor position may sue under Title VII, if a court later determines that the person actually hired for the position was a common-law employee. We simply note that our holding in Cilicek did not squarely resolve this issue. The district court erred in concluding otherwise, and thus MCIT is not entitled to the court's award of attorneys' fees and costs.

AFFIRMED IN PART AND REVERSED IN PART

8