**Anthony BLOCKER, Plaintiff,**

v.

**GIANT FOOD, INC., et al., Defendant.**

**No. CIV. JFM–02–541.**

United States District Court,
D. Maryland.

Feb. 20, 2002.

See also 187 F.Supp.2d 462.

JoAnn Patricia Myles, Largo, MD, for plaintiff.

Robert P. Watkins, Julie Hilden, Kumiki Gibson, Kathleen L. Jennings, Kristin E. Adler, Jeffrey M. Smith, Williams and Connolly LLP, Washington, DC, Mark Scott London, London & Mead, Washington, DC, Claudette V. Ferron, Washington, DC, for defendants.

## OPINION

MOTZ, District Judge.

Plaintiff Anthony Blocker has instituted this action against Giant Food, Inc. ("Giant")[1] alleging discrimination on the basis

---

1. Blocker has also asserted claims against several of Giant's employees. Those defen-

dants are entitled to summary judgment for the reasons stated in the accompanying opin-

of race under Title VII and § 1981, quantum meruit, discrimination under the Maryland Human Relations Act, intentional infliction of emotional distress and negligent infliction of emotional distress.[2] Defendant now moves for summary judgment on all counts. The motion will be granted.

## I.

Blocker was hired by Giant as a vacation relief worker at Giant's Landover, Maryland warehouse in October 1989. He was hired into a permanent position as a produce selector in the Landover warehouse three months later. A produce selector is a warehouse employee who selects produce items from the warehouse to ship to various Giant stores. "[S]ome of the items could be as light as two pounds on up to maybe seventy or eighty pounds." Blocker Dep. at 38. Throughout his employment at Giant, Blocker was a member of the Warehouse Employees Local Union No. 730.

On July 18, 1994, Blocker slipped on the stairs and fell as he left the warehouse during a break. The fall injured Blocker's back, but the next day Blocker saw a physician who released him to work on "modified duty."[3] He was limited to lifting no more than ten pounds. *See* Med. Certif. dated July 19, 1994, Def.'s Ex. 5. Giant sets out the purpose, eligibility requirements and specifications of its modified duty program in a memorandum that employees must sign to enter the program. Blocker signed this memorandum on July

20, 1994. Def.'s Ex. 1. According to the memorandum, Giant's modified duty program "is designed for associates who are recovering from a temporary disability and are unable to fulfill all of the requirements of their present job." In particular, "it is designed for [employees] whose physicians feel that an early and gradual return to work will facilitate a speedy and total recovery." *Id.*

From August 15 through August 22, 1994, Blocker took medical leave from Giant. Med. Certif. dated August 15, 1994, Def.'s Ex. 6. Blocker returned to the modified duty program on August 23, 1994 and the next day signed a new memorandum acknowledging the terms of the program. Def.'s Ex. 2. The same day that he signed the memorandum to return to modified duty, Blocker went on medical leave because he was unable to work at all. *See* Med. Certif. dated August 24, 1994, Def.'s Ex. 9. Blocker did not successfully return to his position after this date. He periodically presented Giant with medical certifications that stated that he was unable to work. On November 14, 1995, Blocker submitted a medical certification that stated "no work 3 months more." Med. Certif. dated November 14, 1995, Def.'s Ex. 20. On December 27, 1995, Blocker attempted to return to the modified duty program, presenting Giant with a medical certification stating that he should lift no more than 15 pounds. *See* Med. Certif. dated December 26, 1995, Def.'s Ex. 21. Giant refused to let Blocker return to the modified duty program.

---

ion in *Carson v. Giant Food, Inc.*, JFM–96–2882. That opinion also addresses Blocker's state law claims against Giant, in addition to global arguments made by Blocker and other Plaintiffs concerning the early right-to-sue notices issued to them by the Equal Employment Opportunity Commission. Thus, this opinion focuses on Blocker's disparate treatment and retaliation claims under Title VII and section 1981.

2. On August 7, 1997, I dismissed Blocker's claims based on §§ 1985 and 1986, the Equal Pay Act and the Americans with Disabilities Act.

3. Giant used the terms . modified duty and light duty interchangeably.

While Blocker was unable to work, he was paid disability benefits by Giant's worker's compensation carrier, Kemper Insurance Co. On February 14, 1995, Dr. Antoni B. Goral examined Blocker for Kemper. Dr. Goral concluded that Blocker had a permanent injury and had reached "Maximal Medical Improvement." Let. from A. Goral to B. Green dated Feb. 14, 1995 at 2–3, Def.'s Ex. 12. He concluded that Blocker could "return to a work status which requires no repetitive bending or lifting of greater than twenty five pounds repetitively, for a period of four weeks, after which time he [could] resume a full work status." *Id.* at 3. In April 1995, Blocker also underwent an Ergonomics Physical Abilities Test designed to replicate the physical requirements of his job. *See* Dennison Decl. at ¶ 7. After less than two minutes, he had to stop the test due to his medical condition. On May 9, 1995, Dr. Goral examined Blocker again and concluded that Blocker was not "capable of working in an environment which requires prolonged standing, walking or heavy lifting." Let. from A. Goral to B. Green dated May 9, 1995 at 3. On July 10, 1995, Giant's Modified Duty Placement Committee considered Blocker's situation and unanimously recommended that Blocker be removed as a warehouse employee and assisted in locating another less strenuous position at Giant. Dennison Decl. at ¶ 9. On July 17 and August 31, 1995, Giant wrote letters to Blocker informing him of its decision and asking him to contact its employment office regarding reassignment. *See* Lets. to A. Blocker from R. Crescenzi dated July 17, 1995 and Aug. 31, 1995, Def.'s Ex. 15, 16.

In mid-October 1995, Blocker met with Bea Schlesinger of the Giant employment office. Ms. Schlesinger reviewed with Blocker job opportunities that were available with Giant and Blocker told her that he was either not qualified for them or unable to perform them due to his physical condition. *See* Blocker EEOC Aff. at 3, Def.'s Ex. 17. On October 27, 1995, Giant informed its insurer, Kemper, of Blocker's meeting with Schlesinger. On October 30, 1995, Kemper terminated Blocker's disability benefits because he refused Giant's reassignment offer. Termination of Temp. Disab. Form dated October 30, 1995, Def.'s Ex. 19.

On January 4, 1996, Blocker filed a new claim with the Worker's Compensation Commission, stating that he had a "[t]emporary total disability from 10/16/95 present and continuing." Worker's Compensation Commission Claim dated Jan. 4, 1996, Def.'s Ex. 23. The Commission awarded Blocker benefits for 30 days from the date of the hearing while Giant tried to place Blocker in a job. Worker's Comp. Comm'n Award dated Feb. 27, 1996, Def.'s Ex. 26. From January through March 1996, Giant attempted to place Blocker in a new job at Giant, *see* Def.'s Exs. 27–29, and Kemper hired an employment consultant to help Blocker find a job outside of Giant, *see* Blocker Dep. at 197. Eventually, Blocker ended his relationship with the counselor and Kemper immediately halted his benefits. *See* Blocker Dep. 202–204.

Blocker filed another Worker's Compensation Commission Claim on November 1, 1996 claiming that he had a permanent injury to his back. Worker's Comp. Comm's Claim dated Nov. 1, 1996. On January 14, 1998, Kemper and Blocker agreed that Kemper would pay Blocker $20,000 to satisfy his Worker's Compensation Claim. The Worker's Compensation Commission approved the settlement on March 30, 1998. Worker's Comp. Comm'n Order dated March 30, 1998.

## II.

Blocker has made claims under Title VII and § 1981 of racial discrimination based

on disparate treatment and retaliation. For both of these claims, he has not met his burden under the three-part burden shifting scheme of *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[4] Summary judgment will be granted as to these claims.

### A.

■ Blocker's disparate treatment claim is based on Giant's refusal to allow him to return to light duty on December 27, 1995. In order to establish a prima facie case of racial discrimination based on disparate treatment, Blocker must show that (1) he is a member of a protected class; (2) he was qualified to return to modified duty on that date; (3) he did not get to return to modified duty; and (4) other employees who are not members of the protected class and who were similarly situated were placed in the modified duty program. *See Taylor v. Va. Union Univ.*, 193 F.3d 219, 233 (4th Cir.1999) (en banc). If Blocker establishes a prima facie case, the burden shifts to Giant to advance a legitimate, nondiscriminatory reason for the adverse employment action. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If Giant successfully proffers such an explanation, the burden returns to the plaintiff to show that the proffered reason is a pretext for impermissible discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Viewing the evidence in the light most favorable to Blocker, he has failed to establish the second and fourth elements of the prima facie case. Giant's modified duty program was for employees who were recovering from temporary disabilities, were expected to return to regular duty within 90 days and whose recovery was likely to be aided by a partial workload. *See* Def.'s Ex. 1. Blocker did present Giant with a medical certification on December 27, 1995 that stated that he was ready to return to light duty. *See* Def.'s Ex. 21. However, the certification does not specify how long it would be before Blocker could return to regular duties. *Id.* In addition, this certification cannot be reconciled with the medical certificate from the same doctor six weeks earlier stating that Blocker could not work for three more months, Def.'s Ex. 20, or Blocker's January 4, 1996 Worker's Compensation claim that states that he had a temporary total disability from "10/16/95 present and continuing," Def.'s Ex. 23. In fact, the report from the physician that completed both medical certificates indicates that he changed his diagnosis only because Blocker requested that he do so. *See* Pl.'s Ex. 109. Based on the present record, Blocker has failed to show that he was qualified for Giant's modified duty program.

■ In addition, Blocker has not shown that other employees not in a protected class were given modified duty under similar circumstances. To satisfy this prong of the prima facie case, Blocker relies on several affidavits by warehouse workers. However, these affidavits contain general statements that the workers had seen white employees be on modified duty for more than 90 days. They do not specify the types of injuries the white employees had sustained or their prognosis for returning to regular duty. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir.1996) (holding that affidavits that are conclusory can not be used to oppose motion for summary judgment).

**4.** The analysis and result are identical under Title VII and Section 1981. *See Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir.1985) ("Under Title VII and ... § 1981, the elements of the required prima facie case are the same.").

Blocker also submits the produce seniority list and the worker's compensation awards of a number of Giant employees that were injured yet still appear on the list. The awards do not specify the race of the employees, whether they were currently or ever in the modified duty program or whether they were capable of returning to regular duty despite their injuries. This evidence does not show that similarly situated white employees were placed in the modified duty program.[5] Thus, Blocker has not established the fourth element of a prima facie case of disparate treatment.

### B.

▆▆▆ Blocker's retaliation claim could potentially be based on several different actions by Giant. In his complaint, Blocker claims that Giant ceased worker's compensation payments to him on August 15, 1996, in retaliation for his filing an EEOC discrimination charge on May 7, 1996. Compl. ¶¶ 100, 102. Blocker's reply brief focuses on the claim that Giant terminated him in November 1996[6] in retaliation for filing this suit two months earlier. Pl.'s Reply Br. at 14. In order to establish a prima facie case of retaliation, Blocker must show that: "(1) [h]e engaged in a protected activity; (2) the employer took an adverse employment action against

h[im]; and (3) a causal connection existed between the protected activity and the asserted adverse action." *Von Gunten v. Md.,* 243 F.3d 858, 863 (4th Cir.2001). Even if I assume that Blocker is able to establish a prima facie case of retaliation,[7] his claim still fails. Giant has offered legitimate non-discriminatory justifications for its actions and Blocker has not proven that they were merely pretext for retaliation.

Giant has offered legitimate non-discriminatory justifications for both adverse employment actions that Blocker claims were retaliatory. First, Blocker's worker's compensation benefits were terminated because he declined to work with the employment counselor that Kemper had procured for him. *See* Blocker Dep. at 204 ("The relationship between myself and the counselor was severed. The payments were severed also.") Second, Giant terminated Blocker because it believed he had a permanent injury that precluded warehouse work and Blocker had refused its offers of reassignment to a different position. *See* Pl.'s Opp'n Br. at 14.

Blocker argues that these non-discriminatory justifications were merely pretext for retaliation because white employees with similar injuries remained in selector positions and were not required to look for

---

**5.** Blocker also attempts to rely on his own statements to establish this element of the prima facie case. However, his statements offer little, if any support, in establishing that similarly situated white employees were treated more favorably. *See* Blocker Dep. at 79–80 ("[O]n December 27th, 1995 there were white counterparts that I worked with that were on light duty and same injuries or same restrictions or possibly different, I'm not sure because I'm not privy to their medical documentation."); *see also* Blocker EEOC Aff. at 2 (listing black and white employees who participated in Giant's modified duty program and black and white employees who were denied entry into the program). In addition, mere allegations by Blocker are insufficient to

establish a prima facie case. Blocker "is required to identify specific evidence in the record, and to articulate the 'precise manner' in which that evidence supported [his] claim." *Causey v. Balog,* 929 F.Supp. 900, 910 (D.Md. 1996), *aff'd,* 162 F.3d 795 (4th Cir.1998) (citations omitted).

**6.** Blocker does not point to a specific place in the record to indicate when Giant actually terminated him.

**7.** Giant argues that the alleged adverse employment action, cessation of Blocker's worker's compensation benefits, was caused by Kemper, not Giant.

jobs outside of Giant with the help of an employment counselor. As discussed above, Blocker has failed to provide specific evidence to support his claim regarding white employees. His argument is also contradicted by his statement in his Worker's Compensation Claim that he was unable to work as a selector. For these reasons, Blocker has not met his burden of showing that Giant's reasons were merely pretext for retaliation. Thus, Blocker's retaliation claim must fail. *Settle v. Baltimore County,* 34 F.Supp.2d 969, 991 (D.Md.1999) (explaining that the plaintiff bears "the ultimate burden of projecting evidence sufficient to prove that [he has] been the victim[ ] of discriminatory treatment"); *Evans,* 80 F.3d at 959 (citations omitted). ("[T]he defendant-employer has an opportunity to present a legitimate, non-discriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the prima facie case 'drops out of the picture' and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination.")

A separate order is attached.

### ORDER

For the reasons stated in the accompanying Opinion and in the related Opinion in the case of *Carson v. Giant Food, Inc.,* JFM–96–2882, it is, this 20th day of February 2002

ORDERED

1. Defendants' motions for summary judgment against Plaintiff on all causes of action in Plaintiff's complaint are Granted; and

2. Judgment is hereby entered in favor of the Defendants.