Tricia F. PETTIS, Plaintiff—Appellant,

v.

**HOUSE OF RUTH MARYLAND, INCORPORATED, Defendant—Appellee.**

No. 04–2443.

United States Court of Appeals, Fourth Circuit.

Submitted: July 15, 2005.

Decided: Aug. 11, 2005.

Tricia F. Pettis, Appellant pro se. Steven Ellis Bers, Melissa Menkel Shorey, Whiteford, Taylor & Preston, L.L.P., Baltimore, Maryland; Judith Anne Wolfer, Baltimore, Maryland, for Appellee.

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

Affirmed by unpublished PER CURIAM opinion.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Tricia F. Pettis alleges that she was unlawfully terminated by House of Ruth Maryland ("HORM") because of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e–17 (2000), 42 U.S.C. § 1981 (2000), and the Prince George's County (Maryland) Human Relations Commission Act. Pettis also claims her termination violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 (2000). The district court granted summary judgment to HORM, and Pettis appeals. We have reviewed the record and find no reversible error.

HORM, a non-profit organization with a mission to prevent and remedy domestic violence, hired Pettis in November 2001 as a staff attorney for its legal services clinic at the Prince George's County Courthouse. The clinic handles protective orders and emergency motions for victims of domestic violence.

On April 10, 2002, Pettis left her bag at the security station at the courthouse. Officials from the sheriff's office said the bag was unidentified and placed it outside. When Pettis returned for the bag, she was upset her bag was outside and, according to officials, shouted at security personnel and threatened to have a security officer fired. The sheriff's office revoked Pettis' security pass to the courthouse for threatening an officer, causing embarrassment to HORM.

In late April 2002, Pettis was sexually assaulted in circumstances unrelated to this case. Pettis left work early on April 29, 2002, for medical treatment. The details of her illness are not contained in the record, but resulted from the sexual assault and the medications she received after the assault.

Pettis used paid and unpaid leave until she returned to work on May 21, 2002.

HORM excused her absence for work, and Pettis did not explain her illness to her supervisors. Pettis brought a note from a physician's assistant requesting "light duty" and recommending she work from home two days a week for the next two weeks before returning to regular duty. Monica Player, Pettis' supervisor, was uncertain what "light duty" meant and asked Pettis to explain her request and condition. Player said that Pettis became belligerent and gave no further explanation because her medical records were confidential.

HORM Legal Clinic Director Dorothy Lennig scheduled a meeting in Baltimore with Pettis to discuss Pettis' "light duty" request, her attitude toward Player, and the status of a letter of apology Pettis had been directed to prepare following the courthouse incident. Pettis claimed Lennig told her to bring a list of all her medications and medical records.

Pettis contacted attorney Nigel Scott to serve as her counsel at the meeting. Scott called Judy Wolfer, a staff attorney who was not Pettis' supervisor, and asked if the meeting could be rescheduled because he had a conflicting appointment. Wolfer told him that the meeting was only to find out how Pettis would return to work. Wolfer told Scott she expected Pettis to attend the meeting. Scott spoke to Pettis and told her that Wolfer might get back to him about rescheduling the meeting. Scott did not tell Pettis she was excused from the meeting nor did he advise Pettis to decline to attend the meeting.

Pettis did not attend the meeting in Baltimore and did not inform anybody at HORM that she would not attend. Lennig and Executive Director Carole Alexander decided to terminate Pettis for failure to report to the meeting. Alexander wrote to Pettis that she was terminated for "insubordination, failure to attend a supervision meeting and failure to comply with House of Ruth personnel policies." Before Pettis received notification of her termination, she sent a letter to explain her absence from the meeting. Pettis wrote that she did not attend the meeting because she "needed moral support in overcoming the stressful situation in which I am currently engaged." She said Scott had told Wolfer she would not attend the meeting, but Scott denied telling Wolfer that Pettis would not attend.

This Court reviews an award of summary judgment de novo. *Higgins v. E.I. DuPont de Nemours & Co.,* 863 F.2d 1162, 1167 (4th Cir.1988). Summary judgment is appropriate when there is no genuine issue of material fact given the parties' respective burdens of proof at trial. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether the moving party has shown there is no genuine issue of material fact, a court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Id.* at 255, 106 S.Ct. 2505; *Smith v. Virginia Commonwealth Univ.,* 84 F.3d 672, 675 (4th Cir.1996).

█ Pettis first argues that the district court erred by not giving preclusive effect to findings of fact by the Virginia Employment Commission ("VEC") made in connection with Pettis' claim for unemployment compensation benefits. The VEC determined that Pettis did not intentionally fail to attend the meeting scheduled by Lennig since her counsel sought to reschedule the meeting, and that Pettis did not have an obligation to reveal her medical records. Factual determinations made in state unemployment claim proceedings receive no preclusive effect in actions brought under federal statutes despite involving the same operative facts. *Ross v. Communication Satellite Corp.,* 759 F.2d

355, 360 (4th Cir.1985), *abrogated on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). "[A] judicial determination by one administrative agency is not binding on another adjudicator, which is seeking to determine an apparently identical issue under a different statute ... so long as there exist substantial differences between the statutes themselves." *Id.* at 361–62 (internal quotations and citations removed). In Virginia, an employer alleging misconduct as a basis for denying an employee unemployment compensation benefits must show that the employee deliberately and willfully engaged in conduct evincing a complete disregard for the employer's workplace standards and policies. *See* Va.Code Ann. § 60.2–618 (Michie 2005); *Branch v. Virginia Employment Comm'n*, 219 Va. 609, 249 S.E.2d 180 (1978). In an action under Title VII, however, the standard is quite different because all the employer must do to meet its burden of production is provide the finder of fact with a lawful nondiscriminatory reason for the discharge. Because the legal standards are not identical, the findings of the VEC cannot be given preclusive effect under *Ross*.

Pettis claims she was unlawfully terminated by HORM due to her race in violation of Title VII and 42 U.S.C. § 1981 (2000). To survive summary judgment, Pettis must come forth with either direct evidence of discrimination or establish a prima facie case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Pettis submitted no direct evidence of racial discrimination. To establish a prima facie case of discriminatory termination under Title VII or § 1981, a plaintiff must show that: (1) she belongs to a protected class; (2) she was terminated; (3) at the time of the termination, she was performing at a level that met legitimate job expectations; and (4) she was replaced with a similarly situated applicant outside the plaintiff's protected class. *See King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir.2003). The parties do not dispute that Pettis, an African American, is a member of a protected class, that she was terminated, or that she was replaced with a similarly situated applicant outside her protected class.

■ Pettis claims she was meeting HORM's job expectations, but has provided little evidence beyond her own opinion. An employee's "naked opinion" of her performance is not enough to establish a prima facie case of discrimination. *King v. Rumsfeld*, 328 F.3d at 149; *Evans v. Technologies Apps. & Serv. Co.*, 80 F.3d 954, 959 (4th Cir.1996). "It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir.1996). HORM established that Pettis did not meet its job expectations. Pettis' failure to attend the meeting, belligerence to Player, and the courthouse incident demonstrated an unprofessional pattern of conduct. Pettis failed to prove that she met the job expectations of HORM and, therefore, failed to establish a prima facie case of discrimination.

■ Pettis also claims her termination violated the ADA. To establish a prima facie case of wrongful termination under the ADA, "a plaintiff must show that (1) she was a 'qualified individual with a disability'; (2) she was discharged; (3) she was fulfilling her employer's legitimate expectations at the time of discharge; and (4) the circumstances of her discharge raise a reasonable inference of unlawful discrimination." *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 272 n. 9 (4th Cir.2004). Pettis' disability claims arose

from her illness and subsequent request for light duty. To demonstrate she is a qualified individual with a disability, she must show that she is significantly restricted in a major life activity. *Pollard v. High's of Balt., Inc.,* 281 F.3d 462, 467 (4th Cir.2002). An impairment's impact on a major life activity must be "permanent or long-term." *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). "[A] temporary impairment . . . will generally not qualify as a disability under the ADA. An impairment simply cannot be a substantial limitation on a major life activity if it is expected to improve in a relatively short period of time." *Pollard,* 281 F.3d at 468. Pettis failed to demonstrate her illness qualified as a disability because her illness only lasted a little over a month, from April 29 until June 2, 2002. Her temporary illness is not a disability under the ADA.

■ Pettis claims that HORM's medical-record inquiries violated the confidentiality provisions of the ADA, which generally prohibit an employer from discriminating against an individual by requiring medical examinations or making inquiries regarding the nature and extent of an employee's disability. 42 U.S.C. § 12112(d) (2000). HORM requested medical information after Pettis requested an accommodation for a two-week period of light duty and permission to work from home. The ADA "permits employers . . . to make inquiries or require medical examinations necessary to the reasonable accommodation process." 29 C.F.R. pt. 1630, App. § 1630.14(c). The information sought by HORM about Pettis' condition was permissible to determine how Pettis would be able to perform her job and did not violate the ADA confidentiality requirements.

Pettis claims HORM fired her in retaliation for exercising her confidentiality rights under the ADA. Pettis did not include this claim in her EEOC complaint; therefore, no administrative investigation was conducted on this claim. Therefore, because the scope of Pettis' complaint exceeds the limits set by the allegations of her administrative complaint, we cannot analyze the merits of Pettis' retaliation claim. *See Bryant v. Bell Atlantic Maryland, Inc.,* 288 F.3d 124, 132–33 (4th Cir. 2002).

Accordingly, we affirm the district court's order granting HORM's motion for summary judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*