**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 05-1946**

—————————

OLETA K. GRAHAM,

Plaintiff - Appellant,

versus

PRINCE GEORGE'S COUNTY,

Defendant - Appellee,

and

JACK B. JOHNSON; PRINCE GEORGE'S COUNTY FIRE
DEPARTMENT,

Defendants.

—————————

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  William D. Quarles, Jr., District Judge.
(CA-04-2391-1-WDQ)

—————————

Submitted:  July 18, 2006          Decided:  July 25, 2006

—————————

Before WIDENER, WILKINSON, and TRAXLER, Circuit Judges.

—————————

Affirmed by unpublished per curiam opinion.

—————————

Gary T. Brown, Peter E. Mina, GARY T. BROWN & ASSOCIATES, P.C.,
Washington, D.C., for Appellant.  David S. Whitacre, County
Attorney, Rajeshanand Kumar, Associate County Attorney, Tonia Y.
Belton-Gofreed, Associate County Attorney, OFFICE OF LAW FOR PRINCE

GEORGE'S COUNTY, MARYLAND, Upper Marlboro, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Oleta Kay Graham, 60, worked for Prince George's County, Maryland, for 27 years. She began in 1980 as an administrative aide in the Office of Emergency Management ("OEM"), a division of the County Fire Department. She was promoted to Community Developer at a salary of approximately $68,000. She excelled in that position, which required her to work closely with other emergency management groups, and she received outstanding performance evaluations.

In July 2001, Reginald Parks, an African-American male, became the director of the OEM. Parks gave Graham, who is Caucasian, the working title of Deputy Director. Nevertheless, for purposes of salary, Graham remained classified as a Community Developer. Although Parks expressed praise for Graham, Parks upset Graham only a few months into the new job when he called her into his office and asked her why she laughed at the former OEM director.

In May 2002, Parks was told by his superiors that Graham could not be reached after the activation of an Emergency Operations Center ("EOC"), which serves as a command center when a disaster calls for more than one county to respond. Parks informed Graham that this was not acceptable and ceased using her as his primary contact. Parks claims that in February 2003 he was again unable to reach Graham when an EOC was activated. In response, Parks sent Graham an email entitled "Disappointed and Frustrated" which

3

asserted that Graham had "made it [a] habit of not being reachable after hours and on weekends" and explained that her tardiness or failure to appear at "the EOC ha[s] not gone unnoticed by the administration and volunteers that [she was] supposed to supervise." Parks concluded by "questioning [her] dedication to this office." Parks allegedly stopped communicating with Graham following any given reprimand, although he responded to job-related questions.

Graham expressed to Parks on various occasions her desire to be promoted. Parks explained that he lacked such authority, as Deputy Fire Chief Blackwell was the only person able to grant a promotion within the OEM. However, Parks encouraged Graham to look for positions in other counties.

In December 2002, Calvin Hawkins transferred from the Office of the County Executive to the OEM. Hawkins, who was African American and younger than Graham, was classified as an administrative specialist but enjoyed the working title of Deputy Director. Like Graham, however, Hawkins realized no increase in pay grade with this additional title, and remained at his previous $80,000 salary. Paula Burr, an African American attorney who was also younger than Graham, was also transferred to the OEM from the Office of the State's Attorney. She was appointed as an administrative specialist by the County Executive at a salary of $80,000 to $90,000.

4

In March 2003, Public Safety Director Fred Thomas informed Parks that Graham would be transferred to another office; however, Thomas was fired shortly thereafter and Parks intended to cancel the transfer. Graham, however, demanded the completion of the transfer, which she received on March 17, 2003.

Graham alleges that the County's actions discriminated against her on the basis of her sex and race, in violation of Title VII, and her age, in violation of the Age Discrimination in Employment Act ("ADEA"). Specifically, Graham alleges that she was subjected to a hostile work environment. To advance to trial on this claim, Graham must adduce evidence that (1) she "experienced unwelcome harassment"; (2) such harassment was based on her race, sex or age; (3) "the harassment was sufficiently severe or pervasive to alter the conditions of [her] employment and to create an abusive atmosphere"; and (4) "there is some basis for imposing liability on the employer." Baqir v. Principi, 434 F.3d 733, 745-46 (4th Cir. 2006), petition for cert. filed (June 15, 2006) (No. 05-1605). The district court concluded that Graham failed to forecast sufficient evidence that the alleged harassment was severe and pervasive. Graham claims points to the reprimands from Parks regarding her performance and the harsh way in which Parks communicated (or refused to communicate). The district court determined that, although such facts reflected an unpleasant working environment, they did not support a hostile one based on an unlawful

5

characteristic. Additionally, the district court pointed out that Graham conceded that, despite these instances, she was able to discuss work-related issues with Parks and continued to perform at a high level.

Graham also asserts that the County failed to promote her to the higher Deputy Director pay grade because of her race, age, and sex. In order to proceed on a failure to promote claim, Graham must establish that: "(1) she is a member of a protected group, (2) she applied for the position in question, (3) she was qualified for that position, and (4) the defendants rejected her application under circumstances that give rise to an inference of unlawful discrimination." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005). Graham does not provide support to indicate that anyone was promoted to Deputy Director; although Hawkins and Burr also had a "working title" of Deputy Director, both employees remained in a separate work classification and grade. Additionally, even if Graham meets these prima facie elements, she is entitled only to an inference of discrimination that can be rebutted if the employer articulates a legitimate, nondiscriminatory reason for its actions. See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 142 (2000). The district court found that the County offered sufficiently legitimate, nondiscriminatory reasons for not elevating Graham, primarily that Hawkins and Burr had far more specialized expertise than did Graham

6

and were more qualified than Graham. See Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) ("Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision."). Finally, the district court determined that Graham presented no facts to demonstrate that these reasons were pretextual.

Graham also alleges the County engaged in wage discrimination under Title VII. To advance on this claim, Graham must furnish sufficient facts to permit a trier of fact to conclude that she is a member of a protected class and the job she was performing was similar to a higher paying job occupied by persons outside of the protected class. See Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 343 (4th Cir. 1994). The district court concluded that Graham failed to adduce facts showing that she was similarly situated to Hawkins and Burr. All three employees held different classifications in different pay grades.

We have reviewed the briefs and the record and find no reversible error. Accordingly, we affirm substantially on the reasoning of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

7