**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 03-1650**

———————————

BRANDY BRITTON,

                                    Plaintiff - Appellant,

    versus

UNIVERSITY OF MARYLAND AT BALTIMORE, COUNTY;
DONALD F. NORRIS, individually; DEREK G. GILL,
the estate of individually; JAMES VINCENT,
individually; SHIRLEY L. BIGLEY, individually,

                                  Defendants - Appellees.

———————————

Appeal from the United States District Court for the District of
Maryland, at Baltimore. Benson Everett Legg, Chief District Judge.
(CA-99-588-L)

———————————

Submitted: September 6, 2006      Decided: October 25, 2006

———————————

Before WIDENER, WILLIAMS, and KING, Circuit Judges.

———————————

Affirmed by unpublished per curiam opinion.

———————————

David F. Albright, ALBRIGHT & GOERTEMILLER, L.L.C., Baltimore,
Maryland, for Appellant. J. Joseph Curran, Jr., Attorney General
of Maryland, Timothy Paulus, Assistant Attorney General, Cynthia G.
Peltzman, Assistant Attorney General, David R. Moore, Assistant
Attorney General, OFFICE OF THE ATTORNEY GENERAL, Baltimore,
Maryland, for Appellees.

———————————

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c)

PER CURIAM:

Dr. Brandy Britton appeals the district court's grant of summary judgment to the University of Maryland Baltimore County (UMBC), Shirley Bigley, the Estate of Derek Gill, Donald Norris, and James Vincent. Finding no error, we affirm.

## I.

On June 24, 1994, Dr. Britton accepted an offer as an assistant professor in the sociology department at UMBC. Throughout Dr. Britton's early years at UMBC, she was lauded by both students and colleagues for her teaching and research. Dr. Gill, the chair of the sociology department, strongly supported Dr. Britton, periodically giving her a lighter teaching load to allow her to focus on research. In February 1997, Dean Welch, Dean of the College of Liberal Arts and Sciences at UMBC, endorsed Dr. Gill's recommendation that Dr. Britton's appointment be extended for another three years.

In late 1996, Dr. Britton successfully applied for a research grant from the National Institute for Drug Abuse ("NIDA"). The grant was administered by the Maryland Institute for Policy Analyses and Research ("MIPAR"), a UMBC department headed by Dr. Norris. Dr. Norris considered Dr. Britton to be a "top notch" researcher. (J.A. at 617.)

2

On June 30, 1997, a few months before the award of the NIDA grant, Dr. Britton wrote to Dr. Gill requesting "overload compensation"[1] for overtime hours she claimed to have logged and for additional child care expenses. UMBC sometimes paid overload compensation, which must be recommended by the Dean's Office and approved by the Provost, to its faculty in exchange for teaching or research performed in excess of the normal work load. In some cases, when a specific amount of a grant is budgeted for the principal investigator's (PI's) salary, the granting agency may restrict the PI from earning more than her annualized salary, even if there are surplus grant funds available.

Dr. Eckert, a full professor in UMBC's sociology department, also requested overload compensation around the same time for a long-term project he had been asked to undertake by Dr. Martello, the director of the Shriver Center, an on-campus organization devoted to using academic resources to address the problems of the poor and mentally retarded. On July 9, 1997, Dr. Gill "strongly" endorsed both Dr. Britton's and Dr. Eckert's requests and submitted them to Dean Welch, in both cases noting their "extraordinary efforts in attracting research grants and contracts." (J.A. at

---

[1]UMBC contends that "[w]hat Dr. Britton requested was not technically overload compensation for work she intended to perform in addition to her normal workload" because she asked for surplus grant funds for work already performed. (Appellee's Br. at 4-5.)

3

672.) Dr. Norris also endorsed Dr. Britton's request for additional pay.

At about the same time, the Dean's Office received several other requests for overload compensation funded by grants and other outside funding sources, requests that differed from the typical overload request, which asked for university-funded compensation for additional teaching responsibilities. As a result, Provost Argersinger ordered that all overload compensation requests, including Dr. Britton's, be tabled pending a review of UMBC's overload compensation policy. Dr. Finkelstein, Associate Dean, notified Dr. Gill in July and again in December 1997 that no overload compensation requests would be acted on until the Provost reviewed the policy. Both Dr. Gill and Dr. Norris continued to support Dr. Britton's request for overload compensation.

Dean Welch then informed Dr. Britton that it was not possible for her to receive "'back pay' for work already conducted." (J.A. at 649.) In spite of this, Dr. Britton persisted in her request, so much so that Dean Welch discussed the issue with Provost Argersinger. Provost Argersinger suggested that UMBC offer Dr. Britton "Exceptional Funded Research Fellow" status, which would have amounted to an award of overload pay but would have been permitted despite the freeze on overload compensation. Dr. Britton rejected this proposal because it did not give her the full amount of compensation she had requested.

4

While Dr. Britton's request for overload compensation was tabled, Dr. Eckert received overload compensation, although his request was not approved by the Provost. Dr. Martello and his staff at the Shriver Center, unaware that Provost Argersinger had placed a freeze on overload compensation,[2] independently concluded that Dr. Eckert should be paid additional compensation by a "one pay card."[3] Dr. Martello signed three one pay cards for Dr. Eckert.

Following the denial of her request for overload compensation, Dr. Britton's relationships with UMBC administrators and faculty members began to deteriorate. In the fall of 1997, Dr. Britton learned that NIDA intended to cut her grant by 10%. Dr. Britton requested that UMBC make up the difference by foregoing a percentage of the grant designated for institutional overhead. Dr. Norris and Dr. Bass, Dean of the Graduate School, offered to donate a fully funded research assistant to the grant project to help make up the difference. Dr. Norris also attempted to persuade Dr. Britton to purchase cheaper computer equipment, but Dr. Britton refused.

On November 12, 1997, Dean Welch met with Dr. Britton, Dr. Norris, and Dr. Gill to discuss the 10% funding cut. The meeting

[2]Dr. Martello was not notified of the freeze because he is not a UMBC faculty member.

[3]One pay cards are used by UMBC to pay one-time or occasional expenses.

5

was heated, with Dr. Norris speaking loudly to both Dr. Welch and Dr. Britton, and Dr. Britton accusing Dr. Norris of gender discrimination.

Despite Dr. Britton's accusation, Dr. Norris wrote to Dean Welch three weeks later to support Dr. Britton's continued attempts to receive overload compensation. Shortly thereafter, the NIDA grant was transferred out of MIPAR. Dr. Norris felt that because his relationship with Dr. Britton was deteriorating so rapidly, MIPAR could no longer effectively administer the NIDA grant. In addition, MIPAR staff began to question Dr. Britton's veracity after she incorrectly claimed that the Dean's Office had authorized graduate students assigned to the NIDA project to work more than the maximum 20 hours per week allowed by UMBC. Around that time, one student and one anonymous source complained to NIDA that Dr. Britton engaged in scientific misconduct and misused grant funds.

At that point, Dr. Britton became more vocal with her charges, accusing other faculty members of gender discrimination and suggesting that certain faculty members solicited students to file complaints against her in retaliation for her gender discrimination complaints. Soon thereafter, Dr. Britton filed formal complaints of discrimination with the Equal Employment Opportunity Commission (EEOC) against Dr. Norris, Dr. Gill, and various male and female faculty members in the department of sociology. Dr. Britton

6

requested an immediate right to sue letter, which the EEOC issued on December 3, 1998, without investigating her claims.

In July 1999, the National Institutes of Health notified UMBC that it had received allegations of scientific misconduct in connection with the NIDA grant. The letter directed UMBC to undertake a formal inquiry. The committee appointed to undertake the inquiry produced a final report in September 1999, concluding that further investigation was warranted into the allegations that Dr. Britton had falsified academic credentials of grant employees, fabricated project data, misused funds, and had terminated employees in retaliation for cooperating with the investigation.

Shortly after the report was issued, Dr. Britton notified the Provost that she was withdrawing from UMBC's tenure process because of a hostile work environment; under UMBC's policies, her withdrawal would have resulted in the automatic termination of her appointment at the end of the academic year. In October 1999, Dr. Britton improperly removed research property from the NIDA project office. Dean Welch demanded the return of the grant property, but Dr. Britton refused, maintaining that NIDA instructed her not to return the property. NIDA denied making such an instruction to Dr. Britton. On November 12, 1999, UMBC terminated Dr. Britton's employment because of professional misconduct and willful neglect of duty. Dr. Britton finally returned the research property and resigned on December 15, 1999.

7

On March 1, 1999, Dr. Britton filed a 78-page complaint in the United States District Court for the District of Maryland. The district court directed Dr. Britton to file a more concise complaint, and on July 14, 1999, Dr. Britton filed an amended complaint in which she asserted Title VII claims against UMBC and Section 1983 claims against Dr. Norris, Dr. Vincent, Shirley L. Bigley, and the estate of Dr. Gill. On May 22, 2000, Dr. Britton filed a second amended complaint alleging retaliation and state law claims, including claims alleging breach of contract and violation of the Maryland Declaration of Rights.

On March 31, 2003, the district court granted summary judgment to UMBC and to the individual defendants on all counts. The district court found that Dr. Britton offered "no evidence of discrimination or harassment to support any of her claims," (J.A. at 1444.), and thus failed to satisfy a prima facie case of discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) (explaining what a complainant must show to establish a prima facie case of discrimination). The district court further noted that because Dr. Britton was bringing discrimination claims against the same people that had hired and promoted her, there was a strong presumption that the actions complained of were not the result of discriminatory animus. See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996) (classifying the presumption as a "powerful

8

inference")(internal quotation marks and citation omitted). The district court concluded that Dr. Britton had failed to overcome that presumption. Finally, the district court found that UMBC "proffered a legitimate, non-discriminatory reason for every action it took with respect to Dr. Britton," (J.A. at 1445.), and that Dr. Britton had failed to produce evidence tending to show that those reasons were pretextual. See McDonnell Douglas Corp., 411 U.S. at 804 (explaining that claimant must show that the employer's stated legitimate reasons for the adverse action were in fact pretext).

## II.

Dr. Britton appeals, challenging the order granting summary judgment against her in favor of the defendants. We review de novo the district court's grant of summary judgment, applying the same standard as did the district court. See, e.g., Howard v. Winter, 446 F.3d 559, 565 (4th Cir. 2006). "Summary judgment is appropriate when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)).

We have reviewed the record, briefs, and applicable case law on this matter. Our careful review persuades us that the rulings of the district court were correct. Accordingly, we affirm the

judgment in favor of the defendants on the reasoning of the district court.  See Britton v. Univ. of Md. at Baltimore County, Civil No. L-99-588 (D. Md. March 31, 2003).  We dispense with oral argument because the facts and legal conclusions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED